# Horning's Case.

*Public officers—Accounts—Appeal from county auditors.*

The taking of an appeal from the report of county auditors implies an assertion that the amount reported to be due to or from the officer is greater or less than the amount actually due, and although the appellant expressly asserts, when taking it, that this erroneous result was reached by the improper allowance of certain items of the account, this will not preclude the other party from bringing other items under investigation, if that be necessary in order to determine what the true balance is.

Under the Act of June 12, 1878, P. L. 208, ten or more taxpayers may intervene in behalf of the county in an appeal by county commissioners from the report of county auditors finding them to be indebted to the county. In such a case the right to "defend the county" includes the right to object to the allowance of credit items claimed in the account upon the ground of their illegality ; and it is not within the power of the commissioners, by a specification of errors filed at the time of taking their appeal, or later, to confine the investigation to such items of their account as they claim were erroneously disallowed by the auditor.

Argued March 15, 1904. Appeal, No. 8, March T., 1904, by A. G. Scholl et al. from order of C. P. Juniata Co., April T., 1903, No. 21, dismissing exceptions to report of county auditors, in the matter of H. Cloyd Horning et al., county commissioners. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Appeal from report of county auditors. Before AUTEN, J., specially presiding.

The facts are stated in the opinion of the Superior Court.

*Errors assigned* were in refusing exceptions to report of county auditor.

*F. M. M. Pennell*, of *Atkinson & Pennell*, and *J. N. Keller*, with them *Will L. Hoopes*, for appellants.—The intervening taxpayers have and are entitled to all the rights of the county in this litigation. The county could have filed specifications of error, especially if the same was done promptly and before the case was heard by the court, and the intervening taxpayers, by filing these specifications of error, have done only what the county itself could have done, and, as we believe, the

court should have compelled the county to have done, in order to get the issue properly framed, and to eliminate from the case all undisputed facts.   Otherwise we have a multiplicity of suits, between the same parties, growing out of the same cause of action: Cardon v. Clearfield County, 8 Pa. Dist. Rep. 386.

That an appeal from the county auditors' report opens up the entire account of the officers upon whose accounts the appeal was taken, is recognized in the case of Luzerne County v. McNeish, 5 Kulp, 193.   See Mansel v. Nicely, 175 Pa. 367, and Mansel v. Fulmer, 175 Pa. 377.

*C. H. Bergner*, for appellees.—When an appeal from an auditor's report is taken, it brings into controversy the matters complained of in the appeal, and upon the appeal alone is an issue directed: Morley's App., 2 Pa. C. C. Rep. 417 ; Luzerne County v. Whitaker, 100 Pa. 296.

In appeals from auditors the same principle should govern as in appeals from justices.   In the latter they are said to. be de novo, but this only means de novo as to the case originally heard by the justice.   No other case can be heard on appeal from the justice other than that originally presented, and no evidence is admissible or relevant except it would be admissible or relevant before the justice.   The proceedings are de novo only as to procedure ; the cause of action must continue the same : Moore v. Wait, 1 Binney, 219 ; Owen v. Shelhamer,. 3 Binney, 45 ; Reitze v. Meadville & L. Ry. Co., 126 Pa. 437 ; Deihm v. Snell, 119 Pa. 316 ; Brown v. Com., 2 Rawle, 40.

OPINION BY RICE, P. J., October 17, 1904:

In the audit of their accounts for the year 1902 the county commissioners claimed credit, inter alia, for payments amounting to $1,650 made by them, through orders drawn on the county treasurer, to physicians and attorneys for services rendered in certain litigation between John Carl and the county.   The auditors reported that they disallowed $200 of the sum paid to the physicians and $325 of the sum paid to the attorneys, making $525 in all.   They. did not in so many words report this sum as a charge against the county commissioners, but their

findings have been treated throughout, and properly so, as tantamount to a formal report that upon the audit, settlement and adjustment of the accounts of the county commissioners there was found to be due from them to the county the sum of $525. In due time the county commissioners entered an appeal from the report of the county auditors, " wherein they surcharge the said officers with five hundred and twenty-five dollars, being two hundred dollars on account of physicians' charges and three hundred and twenty-five dollars on account of counsel fees in the case of John Karl v. Juniata County." They also gave bond, which was approved by the court, in double this amount and conditioned as provided in section 57 of the Act of April 15, 1834, P. L. 537. About six months afterwards, but before the appeal had been put at issue, the court, upon petition of more than ten taxpayers, granted leave to the petitioners " to intervene on behalf of the county of Juniata in defending said appeal." Still later they filed exceptions or specifications of error to the auditors' report, in which they alleged, (a) that the surcharge on account of counsel fees paid by the commissioners ought to be increased, and (b) that the auditors erred in allowing the commissioners credit for payments made by them on account of certain other matters not directly related to the items mentioned in the appeal. So far as the record shows no attempt was made by either party to put the appeal at issue, but after a hearing, which, it is said, was ordered by the court, the learned judge specially presiding dismissed these exceptions upon the ground that the items therein mentioned were not open to investigation upon this appeal. He held also that under the evidence adduced at the hearing the commissioners were entitled to have the payments specified in their appeal allowed, and, therefore, there was nothing due from them to the county, and directed that the judgment entered against them on the report of the auditors, and the report as well, be stricken from the records.

Passing the question which might be raised as to the regularity of the proceedings whereby this result was reached, we shall consider first the question whether the intervening taxpayers had a right to demand a reinvestigation of the payments, for which the commissioners claimed credit in their account, other than those mentioned in the appeal. The act of 1834

provides, inter alia, that the county auditors shall audit, settle and adjust the accounts of the commissioners and make report thereof to the common pleas, together with a statement of the balance due from or to them ; that from the time of being filed the report " shall have the effect of a judgment against the real estate of the officer who shall thereby appear to be indebted . . . . to the county ; " that " an appeal may be made from such report to the court of common pleas . . . . either by the . . . . county or the officer, and thereupon the court may direct an issue as the case may require to be tried by a jury, upon whose verdict final judgment shall be entered." The act says nothing as to filing exceptions or specifications of error to the report, but it is convenient, and we believe not uncommon in practice to do so. This is an aid to the court in determining the form in which the issue shall be entered (see act of 1838) and also enables it to simplify and expedite the investigation by confining it to the items of the account which are in dispute. See Cardon v. Clearfield Co., 8 Pa. Dist. Rep. 386. But that the appellant, whether the county or the officer, can select the items to be investigated and prevent investigation of all others by a specification filed at the time the appeal is taken, or later, is an entirely different proposition, for which we find no warrant in the language of the act. This construction, moreover, would lead to inconvenient results which we feel safe in concluding the legislature intended to avoid. Take for example, the audit of the account of the county treasurer. Suppose that after the report is filed the representatives of the county become convinced and are able to demonstrate that the credit items erroneously allowed by the auditors are exactly equalled by credit items erroneously disallowed, and that the general result would not be changed on appeal, it would seem unwise to put the county and the officer to that expense. And yet, if the construction contended for be correct, they must appeal in order to prevent the injustice that would result, if, perchance, the officer, on the last minute of the last day, were to enter an appeal from the disallowance of particular items of his account. Again, suppose that the commissioners do not appeal from the audit of their own account within the sixty days allowed by the act of 1834, and that thereafter, but within ninety days from the filing of the report taxpayers appeal, as they have a

right to do under the act of 1878, is it possible for them to confine the investigation to the credit items allowed by the auditors and preclude the commissioners from showing that other credits claimed by them before the auditors were erroneously disallowed ?   If so, then the commissioners although convinced by the report of their inability to show that the balance found due from them is incorrect, must nevertheless appeal or take the chances of having this balance unjustly increased as the result of a partial investigation of their accounts upon an appeal by taxpayers.   We cannot bring our minds to the conclusion that the legislature contemplated an administration of the provisions of the acts of 1834, 1838 and 1878 in a manner that would make possible such results and others equally inconvenient that might be cited.   The appeal which the statute contemplates is an appeal from the report as a whole, so far as it relates to the account of the particular officer and the balance found due to or from him and not an appeal from specific findings of the auditors upon particular items of the account.   The taking of an appeal implies an assertion that the amount reported to be due to or from the officer is greater or less than the amount actually due, and although the appellant expressly asserts, when taking it, that this erroneous result was reached by the improper allowance or disallowance of certain items of the account, this will not preclude the other party from bringing other items under investigation, if that be necessary in order to determine what the true balance is.   We do not find that this question has been particularly discussed in any of the decisions of the Supreme Court or of this court that have been cited, but the conclusion we have reached is in entire harmony with the view expressed in Brown v. Commonwealth, 2 Rawle, 40.   Speaking of the acts of 1791 and 1799, Huston, J., said: " The first account settled by the commissioners with the treasurer is not conclusive on the auditors ; and the report of the auditors," (upon the treasurer's account), " even when made to the court and by them ordered to be filed among the records, is not conclusive.   An appeal within sixty days is given, and if taken in the manner prescribed, the whole is investigated anew before a court and jury, in the county, and this again may go to the Supreme Court."   The point decided in Luzerne County v. Whitaker, 100 Pa. 296, was that the sheriff could not bring

into his account on appeal claims which he had omitted from the account presented to the auditors appointed under the special act of 1842. The ground upon which the decision was put is shown by the following extracts from the opinion of Justice STERRETT : " In thus creating a special tribunal, peculiarly adapted to the examination and settlement of official accounts, it was doubtless intended that the officers named in the act should appear before the auditors, present their accounts and such claims as they might have against the county, so that everything necessary to a full and fair settlement might be duly considered and passed upon; and for the purpose of supplying any omission, or correcting any error in the report, it may, as we have seen, be recommitted for re-examination and correction. . . . It is very clear, however, that he never presented either of them" (the additional claims in question) " to the auditors, nor did he ask to have the report recommitted so that they could be considered and passed upon by them. If he could thus avoid submitting to the auditors material items of his claim, he might, with the same propriety refuse to submit any, and thus practically ignore the authority of the tribunal specially created for the purpose of reauditing and settling his accounts with the county." But no attempt was made in the present case to bring anything under review but the items of the account presented by the commissioners to the auditors and passed upon by them. It is apparent, therefore, that the cited case has no bearing upon the question before us, by reason either of the point decided, or of the principle upon which the decision was based.

It is argued that under the Act of June 12, 1878, P. L. 208, interveners in an appeal taken by a county officer, have authority only to "defend" the county, and that what they are attempting to do in this case is to "prosecute" claims on behalf of the county. The act provides : " That any ten or more taxpayers . . . . may, in behalf of such county, appeal from the report of its county auditors to the court of common pleas, . . . . or prosecute any suit or action in behalf of said county, or defend such county in any suit, process or action, now pending or that may be brought against such county, by appeals from county auditors' reports or otherwise." It was declared in Bell v. Allegheny Co., 149 Pa. 381, that "if there exists

any reason for such a statute, and of that the legislature are the proper judges, it ought surely to be most liberally construed," and it was held that after a judgment has been obtained against a county in a civil action, ten taxpayers may intervene and take the case to the appellate court. It requires no greater liberality of construction to hold, as we do, that the right to intervene on behalf of the county in an appeal by county commissioners from the report of county auditors finding them to be indebted to the county, and to "defend the county," includes the right to object to the allowance of credit items, claimed in their account, upon the ground of their illegality, and that it is not within the power of the commissioners, by a specification of errors filed at the time of taking their appeal, or later, to confine the investigation to such items of their account as they claim were erroneously disallowed by the auditors.

In the view taken by the learned judge below it was not necessary to determine whether the objections raised by the interveners in their second, third, fourth and fifth exceptions were well founded in law and fact or not, and therefore that question was not considered. Some, if not all of them, aver facts which have not been brought upon the record by agreement of the parties, nor by the verdict of a jury, nor even by a distinct finding of the court. In view of our conclusion as to the right of the interveners to be heard upon, and to have an adjudication of, these matters it is manifest that the case is not in condition to be reviewed so far as the merits of the exceptions filed by the interveners are concerned, and no good purpose would be served by passing upon the merits of those filed by the commissioners, thus deciding the case piecemeal. We, therefore, send the cause back for an adjudication, in the mode contemplated by the statutes, of all the questions of fact and law involved in it.

The order dismissing the exceptions or specifications filed by the intervening taxpayers, and the order and judgment entered September 4, 1903, are reversed and set aside; the report is reinstated and its effect as a judgment restored, and the cause is remitted to the court below with a procedendo, the costs of this appeal to be paid by the appellees.