# Walker's Appeal.

*Taxation—Exonerations—Township commissioner—Township treasurer—Act of April 15, 1834, P. L. 509.*

1. A township treasurer has a right to assume in the absence of notice to the contrary that the township commissioners are acting within the scope of their authority when they exonerate the treasurer from the collection of some of the amounts entered in the duplicate.

2. There is nothing in secs. 1 and 2 of art. IX of the constitution of Pennsylvania, nor in the Act of May 14, 1874, P. L. 158, which repeals sec. 48 of the Act of April 15, 1834, P. L. 509, relating to exonerations by commissioners, supervisors and overseers of the poor of townships.

*Taxation—County auditors—Appeal.*

3. On an appeal from the report of county auditors, although the appellant asserts that the erroneous result was reached by the improper

allowance of certain items of the account, such assertion will not pre-
clude the other party from bringing other items under investigation if
that be necessary in order to determine what the true balance is.

Argued March 8, 1910.  Appeal, No. 38, March T.,
1910, by Fletcher Walker, from judgment of C. P. Luzerne
Co., Oct. T., 1908, No. 382, on appeal of Fletcher Walker
from report of county auditor.  Before RICE, P. J., HEN-
DERSON, ORLADY, HEAD, BEAVER and PORTER, JJ.  Af-
firmed.

Appeal from county auditor.

FERRIS, J., filed the following opinion:

The auditors of the township of Plains (a township of
the first class) filed their report for the fiscal year ending
March, 1908, in the office of the clerk of the court of quar-
ter sessions on June 20, 1908, wherein they reported an
indebtedness to the township of $112.81 by its treasurer,
John J. Walsh.

On July 13, 1908, Fletcher Walker, a taxpayer, gave
bond and took an appeal from this report; and upon his
petition averring that the auditors should have found a
balance due the township of $1,781.37, the above stated
rule was granted upon John J. Walsh to show cause why
his account as treasurer as set forth in the report of audit
should not be reformed and the treasurer be surcharged
with the sum of $1,674.56 over and above the said balance
of $112.81, "or with such sum as the court may determine,
and judgment be entered against him and in favor of said
township for the whole amount found to be owing by
him."

Since this rule calls for a reformation of the account
and the ascertainment of the true amount due, if anything,
by the treasurer to the township, the second rule, obtained
by Walsh to show cause why he should not be allowed to
appeal nunc pro tunc from the auditors' report, was un-
necessary for the purpose stated in his petition, viz., that
of permitting the allowance of a credit to which he claimed

to be rightfully entitled but which the auditors had failed to allow him in their report. As the court has no power, in the absence of allegation or proof of fraud in obtaining the report, to allow the appeal asked for after the expiration of the statutory period for taking it (School Dist. v. Wahlers, No. 2, 28 Pa. Superior Ct. 39) this rule must be, and is hereby, discharged.

Fortunately for the treasurer, however, any equities to which he might be entitled may be considered in disposing of the rule for a reformation of his account.

It is conceded that the account as set forth in the auditors' report is incorrect and needs revision. The facts involved in such revision are undisputed, and the only questions for the court to determine are questions of law.

1. The first of these is whether the treasurer is entitled to credit for the amount of taxes which the township commissioners exonerated him from collecting, where, as is here admitted, the taxables owned personal property from which the taxes could have been made or real estate which might have been returned to the proper officials for sale.

On the part of the appellant, it is claimed that the auditors should not have allowed the treasurer credit for these exonerations because the township commissioners had no power to grant them—that all statutes giving the right to exonerate from payment of taxes had been abrogated by the constitutional provision that all taxes shall be uniform, etc., and the Act of May 14, 1874, P. L. 158, passed in pursuance thereof.

On the part of the treasurer it is argued that the commissioners had the right to exonerate these taxes, but even if they had not, the fact that they did so, whether their action was ultra vires or not, relieved the treasurer from the duty, and, indeed, deprived him of the lawful right to collect them and absolved him from any obligation to account for them; that when these taxes were exonerated they were in effect expunged from the duplicate by the same authority that had placed them there, and the

treasurer had thereafter no more power to collect them nor duty to account for them than if they had been originally omitted from the duplicate altogether.

The Act of April 15, 1834, P. L. 509, sec. 48, provides that, "the commissioners of the proper county, and the supervisors and overseers of the poor of the proper township, as the case may be, shall at all times make abatements or exonerations for mistakes, indigent persons, unseated lands, etc., as to them shall appear just and reasonable."

The Act of June 25, 1885, P. L. 187, provided for the annual election in each township of "an officer to be styled collector of taxes to whom the supervisors were required to deliver their duplicates of taxes with their warrants attached, and vested in him all the power for the collection of said taxes, during his term of office, heretofore vested in collectors of county taxes under existing laws." Section 10 of this act provides that "exonerations may be made by the authorities and in the same manner as heretofore." By the Act of June 6, 1893, P. L. 333, the tax collector's term of office was extended to three years. The Act of April 28, 1899, P. L. 104, classified townships and provided that, in townships of the first class, a township treasurer should be elected triennially, upon whom were conferred all the powers possessed by township tax collectors under existing laws.

It would thus appear that the township commissioners were authorized by statutes enacted both before and after the adoption of the constitution of 1874, "to make abatements or exonerations for mistakes, indigent persons, unseated lands, etc., as to them shall appear just and reasonable."

Article IX of the constitution of 1874 provides as follows:

"Section 1. All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws; but the general assembly may, by

general laws, exempt from taxation public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit, and institutions of purely public charity.

"Section 2. All laws exempting from taxation other than the property above enumerated, shall be void."

The Act of May 14, 1874, P. L. 158, was passed to carry these provisions into effect and provides that certain property falling within the general classes as to which sec. 1 of art. IX permits exemption "be and the same are hereby exempted from all and every county, city, borough, bounty, road, school and poor tax: Provided, That all property, real or personal, other than that which is in actual use and occupation for the purposes aforesaid, and from which any income or revenue is derived shall be subject to taxation, except where exempted by law for state purposes, and nothing herein contained shall exempt same therefrom."

It is urged that exoneration from the payment of taxes is exemption from taxation, and that these provisions of the organic law and the act of 1874, operate as a repeal of the act of 1834 in so far as the latter statute authorizes exonerations.

It must be borne in mind, however, that art. IX, secs. 1 and 2, of the constitution, did not execute themselves so as to repeal any existing laws providing for the assessment and collection of taxes; they merely imposed restrictions upon future legislation when it should be enacted: Coatsville Gas Co. v. County of Chester, 97 Pa. 476; County of Erie v. City of Erie, 113 Pa. 360; Evans v. Phillipi, 117 Pa. 226. If the act of 1834, so far as it confers authority to exonerate, was repealed by the Act of May 14, 1874, P. L. 158, it must have been either expressly or by implication. The latter act contains no words of express repeal. Its language is affirmative. Its purpose as expressed in its title is not to subject to taxation property theretofore exempt, but "to exempt from taxation" certain kinds of property enumerated.

The enacting clause of the act specifically does this. It contains nothing inconsistent with the power of abatement and exoneration conferred upon the township authorities by the act of 1834, and, therefore, could not operate as an implied repeal, pro tanto, of that act. The only provisions, if any, of the act of 1874 at all inconsistent with the power to exonerate are contained in the proviso to the act, viz.: "That all property, real or personal, other than that which is in actual use and occupation for the purposes aforesaid and from which any income or revenue is derived shall be subject to taxation," etc. This proviso was held to be unconstitutional in Sewickley Borough v. Sholes, 118 Pa. 165, as imposing, instead of exempting from, taxation, and therefore being legislation upon a second subject not expressed in the title to the act, and thus violative of art. III, sec. 3, of the constitution. In Philadelphia v. Barber, 160 Pa. 123, the decision in Sewickley Borough v. Sholes was reaffirmed in so far as the proviso to the act of 1874 attempted to impose taxation; but the proviso was held to be a valid expression and explanation of the legislative intent in regard to the exemptions made in the previous enacting clause.

We are, therefore, led to the conclusion that the power to exonerate conferred by the act of 1834, has not been abrogated by the constitution and the act of 1874, nor has it been by any subsequent legislation.

It follows that, there being no evidence that this power was abused or illegally exercised in any case, the treasurer is entitled to credit for the amount of such exonerations, and the question whether their allowance by the township commissioners if it had been done without legal authority; would have relieved the treasurer, pro tanto, from his obligation to account for the full amount of his duplicate, need not be decided.

2. The second question presented for consideration is whether the treasurer is entitled to a commission of five per cent on moneys received or collected by him (a) as the

township's share of liquor license fees, and (b) as license fees imposed by the township authorities upon telegraph or telephone companies at the rate of a certain sum for each pole erected by such companies within the township limits.

This question has been decided in the negative by this court as to liquor license fees in the case of Kane v. Township of Wilkes-Barre, No. 168, June Term, 1907, and as to both liquor license fees and pole license fees, in the case of Davis v. The Township of Newport, No. 340, October Term, 1907. We are of opinion that these cases were properly decided and that such fees and not "taxes" within the meaning of sec. 14 of the Act of April 18, 1899, P. L. 104, fixing the compensation of treasurers of townships of the first class at "five per centum of all taxes received or collected by him." The treasurer should, therefore, be surcharged with the amount of commissions at the rate of five per cent upon such fees allowed him by the auditors, unless he should be held entitled to a commission of one per cent thereon under the Act of June 7, 1907, P. L. 452.

3. Whether he is so entitled or not is the third question of law involved in this proceeding.

The act of 1907, just referred to, provides that "each township treasurer (in townships of the first class) shall receive, as full compensation for his services, a sum equal to five per centum of all taxes received or collected by him, and in addition thereto, a sum equal to one per centum on all other moneys received or collected by him, unless a different rate be fixed by ordinance of the township commissioners, passed thirty days prior to his election."

This act was passed during the incumbency of office of Mr. Walsh, and it is argued by appellant that the treasurer is a public officer within the meaning of art. III, sec. 13, of the constitution, which provides that, "no law shall extend the term of any public officer or increase or diminish his salary or emoluments after his election or appointment." That the act, if it applies to Mr. Walsh,

does increase his emoluments is obvious. Is he a public officer within the constitutional inhibition?

The latest authoritative decision on this subject is Richie v. Philadelphia, 37 Pa. Superior Ct. 190. Richie was appointed a real estate assessor of Philadelphia county in 1903, his salary being fixed by the Act of April 12, 1873, P. L. 715, at $2,000 per annum. During his term of office an act was passed which increased the salaries of such assessors from $2,000 to $3,000 per annum. A case was stated to determine whether he was entitled to the increased salary, or whether he was a public officer within the meaning of sec. 13, art. III, of the constitution, and therefore not so entitled. The court, in an opinion by Judge WILLSON, held that he was a public officer within the constitutional prohibition. Upon appeal to the Superior Court the case was argued before all the judges, and on behalf of the assessor the distinction was drawn between "legislative" and "constitutional" officers and Com. v. McCombs, 56 Pa. 436; Com. v. Weir, 165 Pa. 284; Lloyd v. Smith, 176 Pa. 213; Com. v. Moir, 199 Pa. 534, and Kilgore v. Magee, 85 Pa. 401, were cited in support of the proposition that the assessor, being a "legislative" officer, was not a "public officer" within the meaning of sec. 13, art. III, of the constitution. In affirming the court below, Judge HENDERSON, who delivered the opinion of the Superior Court, said (referring to the authorities cited by the assessor), "they relate to the power of the legislature to abolish or diminish the term of an officer not commanded by the constitution. There is a very clear distinction, however, between the power of the legislature to abolish or regulate an office which it created, the control over which is unlimited, and a restriction of the constitution over such power as applied to a particular subject. Even if it be considered inconsistent that the legislature may abolish an office the term of which it may not extend, or by such abolition entirely take away a salary which it may not increase, the restraint is nevertheless imposed by the paramount law of the State and is

not to be got rid of by interpretation in the face of clear. and unambiguous language. The power of the legislature to abolish an office not ordained by the constitution is unquestioned, for there is no restraint on such action, but as to both constitutional and legislative offices the command is that no law shall extend the term or increase or diminish the salary or emoluments after the election or appointment of the incumbent." After conceding that certain agents, employees or petty officers were not intended (under the authority of Houseman v. Com., 100 Pa. 222) to be embraced in the constitutional provision, Judge HENDERSON goes on to say (p. 197), "Where, however, the officer exercises important public duties and has delegated him some of the functions of government and his office is for a fixed term and the powers, duties and emoluments become vested in a successor when the office becomes vacant, such an official may properly be called a public officer." Being of opinion that the collector, custodian and disburser of public funds, in this case the township treasurer, falls within this definition quite as truly as an assessor, we must consider this case as ruling the one before us, and conclude that the treasurer is not entitled to the benefit of the act of 1907 and, therefore, cannot lawfully claim credit in his account for a commission of one per centum on the liquor and pole license fees received by him. He should, accordingly, be surcharged to the extent of commissions allowed him on such money.

4. The fourth question of law arising in the case is whether, in this proceeding, the treasurer can be allowed credit for the amount of uncollectible taxes (a credit omitted by the auditors from the account as stated by them) and if so whether he should not be surcharged with the amount of the commission allowed upon them by the auditors.

This question is answered in the affirmative as to both of its divisions. Upon petition of the appellant this rule was granted not solely for the purpose of surcharging the treasurer but for the reformation of his account and the

154          WALKER'S APPEAL.

Opinion of Court below—Opinion of the Court.   [44 Pa. Superior Ct.

ascertainment of and obtaining judgment for "the whole amount found to be owing by him." In order to do this it is, of course, necessary to allow him any and all credits to which he is justly and lawfully entitled. The undisputed testimony shows that, by reason of the death and removal of taxables or his inability after due diligence to identify and locate them, the treasurer could not and did not collect taxes to the amount of $450.44. He is justly entitled to credit for this sum in the reformed account, and of course should not be allowed commissions on such uncollected taxes.

A claim of credit has also been made by the treasurer for the amount of taxes which certain coal companies refused to pay because they had appealed from the assessment or valuation of their properties, the appeals being still pending. No such claim can be allowed. The Act of April 19, 1889, P. L. 37, giving the right of appeal expressly provides that the appeal shall not prevent the collection of the taxes complained of.

*Error assigned* was order sustaining the appeal.

*John D. Farnham*, for appellant.

*Thomas F. Farrell*, for appellee.

OPINION BY HENDERSON, J., October 10, 1910:

The authority of the treasurer to collect the township taxes existed by virtue of the warrant of the township commissioners. The duplicate accompanying the warrant was a memorandum of the amount which the commissioners directed him to collect from the taxables whose names appeared therein. For reasons not appearing in the record the commissioners exonerated the treasurer from the collection of some of the amounts entered in the duplicate. This was in effect a withdrawal of these items and an amendment of the duplicate to that effect as between the collector and the commissioners. To that extent they

withheld the duplicate and thereby withdrew from the treasurer authority to collect the particular amounts. The presumption is that the commissioners acted within the scope of their authority. At any rate there is nothing to show that at the time the duplicate was in the treasurer's hands and the exonerations were made by the commissioners the treasurer knew that the existing facts did not justify the exonerations. We consider the case within the ruling in Boro. of Millerstown v. McKee, 3 Pennypacker, 129. In that case there was an oral direction simply from the town council to the collector not to collect. The case was submitted to the jury on the inquiry whether in fact the council did instruct the collector to cease to collect taxes; and if so, that their verdict should be for the defendants in an action on the official bond. The treasurer had a right to assume that the commissioners were acting within the scope of their authority and to act accordingly. In this view of the case the appeal must fail.

The learned judge of the court below considered sec. 48 of the Act of April 15, 1834, P. L. 509, relating to exonerations by commissioners, supervisors and overseers of the poor of townships as still in force, notwithstanding secs. 1 and 2 of art. IX of the constitution. We need not enlarge on the argument contained in the opinion of the trial judge. The authorities cited show that the sections referred to did not execute themselves so as to repeal existing laws providing for the assessment and collection of taxes. They merely imposed restrictions on future legislation. The act of 1834 gives to the commissioners and supervisors of townships authority to make abatements or exonerations for mistakes, indigent persons, unseated land, etc., as to them shall appear just and reasonable. It is well shown in the opinion referred to that the Act of May 14, 1874, P. L. 158, contains no express repeal of the act of 1834, nor any implied repeal. None of its provisions are inconsistent with the act of 1834 and, therefore, involve no implied repeal. The por-

tion of the act of 1874 which subjected property to taxation was held unconstitutional in Sewickley Boro. v. Sholes, 118 Pa. 165, because that subject was not embraced in the title of the act. Nothing was proved showing that the authority given to the commissioners by the act of 1834 was unlawfully exercised and the treasurer is therefore not responsible for the exonerations. It may well be doubted in any view of the case whether the exonerations to the collector authorized by the act of 1834 are exemptions from taxation within the meaning of the constitutional provision. The exoneration of the treasurer was not necessarily a release of the property assessed from liability. The assessments were duly made and the taxables regularly charged. The release of the treasurer from liability for the collection of the taxes from which he was exonerated was in relief of the treasurer in order that he might make settlement as provided in sec. 48 of the act of 1834.

The second question involved is answered by our decision in Horning's Case, 26 Pa. Superior Ct. 282, in which it was held that in an appeal from the report of county auditors although the appellant asserts that the erroneous result was reached by the improper allowance of certain items of the account this will not preclude the other party from bringing other items under investigation if that be necessary in order to determine what the true balance is. That decision fully sustains the action of the court below on this branch of the case.

The judgment is affirmed.