Fitzpatrick et al. *v.* Thomas et al., Appellants.

Argued March 30, 1933.  Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Fred T. Fruit,* City Solicitor, for appellant, cited: Bradbury v. Burschell, 220 Pa. 439.

*Howard B. Smiley,* for appellee.—Within certain limits, the court will allow the taxing body to use their own discretion, yet this can be so abused that it ceases to be discretion and then becomes an arbitrary abuse of power which the courts will not tolerate: Lamb v. Redding, 234 Pa. 481; Mason v. Twp., 68 Pa. Superior Ct. 486; Carver v. School Dist., 17 D. & C. 123; Lueder v. Caffret, 9 Kulp (Luzerne) 144; St. Clair School Board's App., 74 Pa. 252.

Taxes can be levied upon the basis of their not being collected.  The presumption is that all taxes will be collected: Mason v. Twp., 68 Pa. Superior Ct. 486.

OPINION BY MR. JUSTICE SIMPSON, April 10, 1933:

On a bill in equity filed by taxpayers of the City of Sharon, a city of the third class in this Commonwealth, the court below, by its final decree, enjoined the municipal authorities from assessing the taxes for 1933 at the

rate fixed in a duly enacted ordinance, solely because, in estimating the gross amount of revenue which would be received under that assessment, allowance was made for such a proportion of the taxes assessed as long experience had shown would probably not be collected during the ensuing fiscal year, wherein the money collected was to be expended for municipal purposes. This appeal by the municipal authorities followed. The decree must be reversed.

The good faith of appellants and the accuracy of their calculations was expressly found by the court below, and the only reason for its conclusion is that "The presumption is that all taxes will be collected, and from the reading of the law it is apparent that it was so regarded by the legislature when the law was enacted." There is no presumption, however, that all taxes will be collected during the year for which they are assessed, nor does the applicable statute here give the slightest intimation of a recognition of this supposed presumption, which, so far as concerns collections during the ensuing fiscal year, is greatly at variance with all experience.

The applicable provision is section 1810 of the Third-Class City Law of June 23, 1931, P. L. 932, 985, which is as follows: "When all estimates for the receipts, liabilities, and expenditures for the ensuing year shall be made, council shall proceed to make the annual appropriations, and shall fix the tax rate at such figure as, with all sources of revenue, will fully meet and cover the aggregate amount of such estimate." The "receipts" there referred to, do not mean the sums which ought to be received during "the ensuing year," but those which probably will be received, and these must "fully meet and cover" the estimated expenditures of that year. This conclusion is borne out also by a later clause of the same section, which says: "and no appropriation shall be made for any purpose in excess of the *estimated receipts* for the fiscal year for which such appropriations are made."

Article VI, section 10, of the Act of June 27, 1913, P. L. 568, 593, from which the provision under consideration was taken, provides as follows: "When all estimates for the expenditures for the ensuing year shall be finally made, council shall fix the tax rate at such figure as, with all sources of revenue, will fully meet and cover the aggregate amount of such estimate." It will be noticed that the Act of 1931 requires estimates for receipts and liabilities to be made, when fixing the tax rate, as well as estimates for expenditures, the clause now reading "When all estimates for the *receipts, liabilities and expenditures* for the ensuing year shall be made," etc., etc. It is reasonable to suppose that the purpose of the change was to make certain that only the *estimated* receipts—and not the hoped-for receipts,—as well as the *estimated* expenditures, will be the factors in fixing the tax rate.

In view of the foregoing considerations, perhaps a better construction of the section under consideration than that asserted by the court below would be to say that it is intended to provide for the rule of "pay as you go"; but it is not necessary to decide at this time whether or not it has done so. What we do decide is that, under it, the municipal authorities are vested with a sound discretion in determining, in good faith, what tax rate will be needed to enable the municipality thereby to collect a sum sufficient, with other estimated receipts, to "fully meet and cover the aggregate amount" of the estimated expenditures for the ensuing fiscal year. Admittedly they so acted in the present instance.

The decree of the court below is reversed, and plaintiffs' bill in equity is dismissed at their costs.

DISSENTING OPINION BY MR. JUSTICE KEPHART:

Because of the importance of this case to the municipalities of the Commonwealth, I feel that I should note my dissent to the majority opinion.

Briefly stated, the City of Sharon placed a levy of 13½ mills on the taxable property of the city, which was assessed at $19,576,150. This contemplated a revenue of $264,278.03. The city authorities concluded that the taxpayers owning approximately 40% of the taxable property would not pay the tax thus assessed, and reduced the estimated receipts for 1933 from the taxes so assessed, by the sum of $106,450.18. In other words, if the taxes assessed were paid to the city, the total receipts over budget requirements would be $106,450.18, and contrary to law.

The question as it presents itself to me is whether or not a conclusion that the taxpayers owning 40% of the taxable property would not pay their tax during the ensuing year, is so unfair and prejudicial to the other taxpayers as to amount to a gross abuse of discretion. The court below determined that it was. With this conclusion I agree.

The court found that "The presumption is that all taxes will be collected and from the reading of the law it is apparent that it was so regarded by the legislature when the law was enacted." The majority opinion disagrees with that conclusion. I agree with the conclusion of the lower court and I do so after a careful consideration of the Third-Class City Act as it relates to taxes. Sections 1809 and 1810 of the Act of 1931, P. L. 932, provide for the budget and then state that the council shall .fix a tax sufficient with the other receipts to cover that budget. Section 2551 provides that the council shall not levy a tax "to exceed 15 mills on the dollar in any one year" for general revenue purposes. The act provides for various departments of government which must incur expenses for operation (such as police, fire, street, and other departments), and this tax provision necessarily limits the amount of expenditures for these purposes; this restriction of the tax to 15 mills on the dollar for these general expenses necessarily implies that

the tax levied will be collected. It gives rise to the presumption that it will be. If not, why the restriction?

Moreover, the act specifically designates what deductions may be made from the tax levy: [1] commissions to tax collectors; [2] rebates for prompt payment; [3] exoneration of poor persons. [The last never includes persons owning real estate.] How is it possible to legitimatize this tax which contemplates a sweeping deduction of 40% of the estimated receipts? The allowance of the three mentioned classes of deductions strengthens the presumption that the legislature intended the balance of the tax to be collected.

The majority opinion states that this "allowance was made for such a proportion of the taxes assessed as long experience had shown would probably not be collected during the ensuing fiscal year." The record does not clearly show the amount of taxes that were in arrears for the years 1929, 1930, 1931 and 1932. From the statement submitted, it is very evident that the proportion of delinquent taxes was ten times heavier for the year 1932 than in any of the preceeding years.

The matter resolves itself into a question of the good faith of the officers in levying the tax. Did they make a proper effort through the tax collecting agencies to secure the taxes assessed against the delinquents whose properties were returned? If taxes are returned against properties the owners of which are able to pay, or through a moderate effort on the part of the proper municipal officers may be made to pay, but such taxes are not collected, then the municipal officers do not act in good faith in loading on the overburdened taxpayer who is willing to pay, the additional burden, through excessive taxation, of carrying on the municipal government. By so doing those escaping taxation (for in the end experience shows this is what happens) make the municipality their banker "to hold the bag," while others who pay are forced to carry on the government alone. If the officers of a municipality were to understand that

excessive taxes would not be permitted simply because the collecting officers, through neglect or design, fail or do not deem it expedient to collect taxes duly assessed in the prior year, we would not have such a condition as is here existent. If municipal officers were to understand that taxes levied under such circumstances would be stricken down, then these officers would be alive to their duties, see that taxes are collected, and thus remove the burden so unfairly thrust on those ordinarily willing to pay. If something is not done to prevent such conditions, and times continue as they are, I can readily foresee a situation where those who are now willing to pay taxes, will, in the future, be unwilling, thus precipitating an intolerable state of affairs in government. This condition should be avoided at all hazards and I deem this occasion a proper one for a salutary warning to all taxing authorities that when taxes can, under the law, be collected, it is their duty to collect them. If through neglect they are not collected, then future levies will be governed in the light of such conduct. It is no answer to say that this is a matter for the voters. It is rather a matter of the orderly process of government which this court has never failed to require in situations presented to it.

When it appeared that a tax had been levied which was 40% in excess of budget requirements, in view of the presumption of collectibility, it was incumbent on the municipal authorities to show that a proper effort had been made to collect the taxes that had been returned for the year 1932, the failure to collect which had occasioned the 40% increase in estimated receipts. That a proper effort was not made is demonstrated by the fact that $50,000 of the estimated receipts comes from 1932 taxes which it is expected will be collected in 1933; yet this delinquency is used as a basis for a 40% increase in the tax rate! To me this is a complete answer to good faith.

The court below understood the situation. Although recognizing that a fair proportion of the amount assessed might be regarded as wholly uncollectible, as in

normal times, it, nevertheless, determined that the proper performance of the duties incumbent on those interested in the collection of taxes would bring into the city treasury an amount, together with other items of receipts, sufficient to pay the estimated budget expenses; and concluded the 13½ mill tax was unjust. There is ample authority under such circumstances for the court to interfere. When municipal authorities so abuse their discretion by failing to insist on the performance of a public duty, their action is tantamount to an arbitrary usurpation of power.

I would affirm the decree of the court below.