## Exoneration from Payment of School Taxes

ARNOLD, Deputy Attorney General, August 22, 1933.—You have asked us to advise you whether a board of school directors may exonerate a person owning real estate from paying school taxes assessed against him.

The term "exoneration", as most commonly used in tax matters, means an action of taxing authorities by which a tax collector is relieved of the responsibility of collecting taxes assessed against particular persons or property. In many cases the practical result of such an exoneration is to relieve the taxpayer himself, because no efforts are made thereafter to collect the tax. In other instances, however, the exoneration of the collector is followed by the filing of liens or other methods of enforcing the taxpayer's liability. A situation in which the legislature has expressly provided for the latter procedure is found in the Act of May 29, 1931, P. L. 280, under which collectors become entitled to exoneration upon returning delinquent taxes to the county commissioners for establishing liens.

That school boards have authority to exonerate tax collectors is settled: Stone v. School District of City of Carbondale, 102 Pa. Superior Ct. 60, 64 (1931), Chester City School Directors (No. 3), 19 Del. Co. 200, 202 (1928), Scranton City School Directors, 6 D. & C. 105 (1924), and In re Auditors School District, Pittston Township, 20 Luzerne L. R. 51 (1918).

However, you have supplemented your inquiry by saying that you are not concerned as to the authority of school boards to exonerate tax collectors, but only as to the power of the boards affirmatively to relieve the taxpayer himself and his property from tax liability. We shall address ourselves to that problem.

Exonerations may be made by school districts on one of three grounds—mistake, unseated lands, or indigency: Act of June 13, 1836, P. L. 525, sec. 6; Act of May 8, 1854, P. L. 617, sec. 31.

Exonerations to correct mistakes are not in reality exonerations at all. Exoneration of unseated lands is clearly in relief of the tax collector only; the lands themselves are returned to be sold at tax sales, under a long established system: Long, et al. v. Phillips, 241 Pa. 246 (1913). We have no hesitation in saying that these two forms of exoneration are entirely proper. Therefore, we shall eliminate them from further consideration, and our discussion will concern only exonerations made on the ground or under the pretext of indigency.

Two principal questions confront us: (1) Is there existing legislation conferring on boards of school directors authority to exonerate taxpayers and taxable property from tax liability; and (2) if there is such legislation, is it constitutional?

The answer to the first question is not entirely free from doubt. No act of assembly expressly confers the power, and the cases provide no explicit authority. However, we believe that the power may be implied from such legislative provisions as do exist. But, since the answer which we shall give to the second question will dispose of the matter, it would serve no useful purpose to enter into a detailed discussion of the first. Suffice it to say that, in our opinion, legislative authority to make such exonerations may be found in the Act of June 13, 1836, P. L. 525, section 6 and the Act of May 8, 1854, P. L. 617, section 31, and was recognized or assumed by the Supreme Court in School Directors of Bedford Borough v. Anderson, 45 Pa. 388 (1863), and Clinton School District's Appeal, 56 Pa. 315 (1868). The legislature attempted to carry the power forward in boroughs and townships by the Act of June 25, 1885, P. L. 187, section 10, and it included it by implication in sections 559, 530 and 545 of the School Code of May 18, 1911, P. L. 309. Incidentally, the School Code repealed the Acts of 1836 and 1854, supra. The Act of May 27, 1841, P. L. 400, section 8, also confirms the existence of authority to make such exonerations at that time.

Therefore, we shall proceed on the premise that there is legislative authority to exonerate taxpayers and their property from payment of school taxes on grounds of indigency. Is it constitutional?

Prior to 1874 the power of the legislature to exempt from taxation was practically unlimited. Abuses of this power led to the adoption of the provisions of sections 1 and 2 of article IX of the Constitution of 1874. As adopted, they were as follows:

"Section 1. All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws; but the General Assembly may, by general laws, exempt from taxation public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit, institutions of purely public charity. . . .

"Section 2. All laws exempting property from taxation, other than the property above enumerated shall be void."

Subsequent amendments have added other permissible subjects of exemption not important here.

We are convinced that exoneration of taxpayers on the ground of indigency, as distinguished from exoneration of the collector, is the granting of an exemption. Exonerations on the ground of mistake and exonerations of unseated lands, however, are not exemptions.

In Sinnemahoning Iron and Coal Company v. Shaffer, 14 Pa. Dist. 368 (1905), a well-reasoned case, it was directly ruled that the constitutional provisions above quoted prevented exoneration of taxpayers after the effective date of the Constitution. The court in that case said:

"All the Acts of Assembly allowing exonerations from taxation have been abrogated by the Constitution, and no exemptions can be allowed except those enumerated in art. IX, § 1, of the Constitution."

In Mercantile Library Hall Co. v. City of Pittsburgh, 9 Sadler 59 (1887), the Supreme Court adopted the opinion of the court below, which held that the Constitution annulled an act which had exempted from taxation the property of the plaintiff. To the argument there advanced that the constitutional provisions were prospective only the court said:

"To say that this section is merely prospective is to say that it is utterly without meaning or good. Any statute thereafter passed in violation of any of the provisions of § 1 would necessarily be void. The intention was to save the existing laws in relation to the manner of assessing and collecting taxes, for the discretion of the legislature as to the time of their repeal; but to wipe out at once all exemptions of property from taxation other than that enumerated in § 1. All such laws 'shall be void'—not when the legislature may see fit to repeal them, but immediately on the adoption of the Constitution."

The effect of this seemingly clear language of the Constitution and of the cases just cited has been confused, however, by other cases which have, in one connection or another, said that the constitutional provisions in question did not repeal any prior laws but were prospective only. Coatesville Gas Co. v. County of Chester, 97 Pa. 476 (1881), and other cases of this kind are distinguished in the Mercantile Library Co. case.

But in Walker's Appeal, 44 Pa. Superior Ct. 145 (1910), it was directly stated that the Constitution had not repealed any laws permitting exonerations and that the power vested in taxing officials by prior acts of assembly was undisturbed. That case, however, involved exoneration of a tax collector, not of a taxpayer, and the Superior Court directly avoided our present question when it used the following argument to sustain its conclusion that the power to exonerate collectors remained:

". . . It may well be doubted in any view of the case whether the exonerations to the collector authorized by the act of 1834 are exemptions from taxation within the meaning of the constitutional provision. The exoneration of the treasurer was not necessarily a release of the property assessed from liability. The assessments were duly made and the taxables regularly charged. The release of the treasurer from liability for the collection of the taxes from which he was exonerated was in relief of the treasurer in order that he might make settlement as provided in sec. 48 of the act of 1834."

The Walker case may well be differentiated from the other cases cited on the ground suggested in the foregoing quotation. Exoneration of tax collectors, not being an exemption, was not affected by the Constitution.

Subsequent cases, dealing with the propriety of the exonerations of collectors, have at times made general statements as to the existence of a power in taxing bodies to exempt property and persons, but we have not found one in which the question was actually decided or even made the subject of direct consideration. The most recent is Robbins v. School District, 80 Pitts. L. J. 30 (1930). The plaintiff there was a taxpayer seeking exoneration, but the case was dismissed on procedural grounds, and the opinion affords us no assistance.

Except for Sinnemahoning Iron and Coal Company v. Shaffer, supra, the only case that has squarely passed upon our present question is Carver et al. v. Hanover Township School District et al., 17 D. & C. 116 (1932). In that case Judge Valentine of the Court of Common Pleas of Luzerne County, in considering the propriety of certain acts of a board of school directors, said (p. 119):

"1. The so-called abatements constituted an attempt on the part of the majority of the members of the school board to relieve the owners of real estate from liability for the payment of taxes assessed thereon. They lack legal authority to take such action."

Judge Valentine's opinion does not contain any discussion of the question, but we believe that his conclusion is fully justified. If we regard the exoneration provisions of sections 530, 545 and 559 of the School Code as new legislation (the code having expressly repealed the Acts of 1836 and 1854 under which prior exonerations had been made), both the legislative provisions and the actual exonerations by local authorities would fall under the constitutional ban on future grants of exemption.

If, on the other hand, following the rather tenuous reasoning of In re Auditors School District, Pittston Township, 20 Luzerne L. R. 51 (1918), we should consider the code provisions on exonerations not as new legislation adopted since the Constitution but as continuations of powers granted by the Acts of 1836 and 1854, carried forward through the medium of the Act of June 25, 1885, P. L. 187, section 10, the result is the same. The Sinnemahoning Iron and Coal Company and Mercantile Library Hall Co. cases, supra, amply sustain the conclusion that the Constitution abrogated the authority given to school boards by the Acts of 1836 and 1854 to exonerate taxpayers on the ground of indigency, as well as prohibiting future legislation of the same kind.

It may be noted that the theory of the Pittston Township Case, that the statutory authority granted by the Acts of 1836 and 1854 has been continued without interruption, in any event could be applied only in boroughs and townships, since the Act of 1885, on which the theory depends, applied only to those municipal subdivisions.

It seems that our conclusion coincides with the view of at least one of the present justices of our Supreme Court. In a dissenting opinion in Fitzpatrick et al. v. Thomas et al., 311 Pa. 191, 196 (1933), Mr. Justice Kephart, speaking of items which may be deducted from a tax levy in cities of the third class, said that the item "exoneration of poor persons", "never includes persons owning real estate".

To summarize:

We conclude that exoneration of taxpayers on the ground of indigency, as distinguished from exoneration of collectors, is the granting of exemptions from the payment of taxes. Prior to the adoption of the Constitution of 1874, such exonerations were permissible, and the School Code of 1911, by implication, purported to permit similar action by boards of school directors. But the provisions of article IX, sections 1 and 2, of the Constitution abrogated then existing powers to make such exonerations and forbade future legislation conferring the power.

Therefore, following the decisions in Sinnemahoning Iron and Coal Company v. Shaffer and Carver v. Hanover Township School District, supra, we advise you that boards of school directors may not exonerate property owners or their property from payment of school taxes on the ground of indigency, although tax collectors may be exonerated from liability to collect such taxes. However, this does not prevent exonerations of unseated lands or on account of mistakes.

From C. P. Addams, Harrisburg, Pa.