82   528
31 SC 569

# Clarke's Estate.

1. Testator directed his executors to hold certain stocks in trust for the sole benefit and use of such of his grandchildren as were in being at the date of his will and designated for each of said grandchildren by name one hundred shares of stock of Pennsylvania Railroad Company and one hundred shares of the Union Railroad and Transportation Company. He then directed his executors to provide or procure out of his residuary estate for each and every child that might be born of his son Charles and his daughter Agnes after the date of his last will and before noon of the 4th day of April 1883, stocks to the same amount and value (viz., ten thousand dollars) as those already bequeathed for the use and benefit of the grandchildren before named. The executors in an amicable action petitioned the court below to determine whether the after-born grandchildren were entitled only to the stocks of the value of $10,000 or to stocks of the same value as those specifically bequeathed. *Held* (reversing the court below), that the after-born grandchildren as they came into being should have set aside for them respectively stocks of the same market value as one hundred shares of stock in Pennsylvania Railroad Company and one hundred shares of stock in Union Railroad and Transportation Company were on the day of the date of the will of testator.

2. As a general rule a will speaks from the death of a testator, yet it is otherwise where its language by fair construction indicates the contrary intention.

November 1st 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Appeal from the Orphans' Court of *Allegheny county :* Of October and November Term 1876, No. 268.

Thomas S. Clarke made a will dated May 30th 1867, and died October 19th 1867.

By article 6 of this will he directed that his executors should hold in trust for the sole use and benefit of his grandchildren certain stocks.

He designated by name each of his grandchildren then living, and provided for each one hundred shares of stock of the Pennsylvania Railroad Co. and one hundred shares of stock of the Union Railroad and Transportation Co.

He then provided as follows :—

" Sect. 2. And further, it is my will, and I do hereby order and direct, that the executors or trustees aforesaid, or the survivor or survivors of them, shall provide or procure, out of my residuary estate, for each and every child that may be born of my said son, Charles J. Clarke, and my daughter, Agnes S. Kennedy, after the date of this, my last will and testament, and before the noon of the 4th day of April 1883, stocks of the same amount and value (viz., $10,000) as those herein bequeathed for the use and benefit of the grandchildren above-named.

" Sect. 3. And further, it is my will, and I do hereby order and direct, that my said executors, or the survivor or survivors of them, shall have full power and authority, at any time, and at all times, to change or convert any or all of said before-mentioned stocks into

[Clarke's Estate.]

other stocks, or into other securities, which they may consider good or safe, whenever they may deem the said change or conversion to be expedient, and for the best interests of my said grandchildren, and the said executors are hereby directed to invest the dividends or profits arising from the said stocks or securities, in securities of the United States, or of the state of Pennsylvania, at the expiration of every six months, or within a reasonable time after receiving the same, for the use and benefit of my said grandchildren, and that the stocks or other securities, together with the accrued dividends which may be received, shall be delivered by the said executors or trustees to each of my said grandchildren who may be living at the time of my death, or who may be born of my said son and daughter before the 4th day of April 1883, as each and every of them respectively shall arrive at the age of twenty-one years, as hereinbefore directed. * * * It is further my will that if any of my grandchildren shall die before arriving at the age of twenty-one years without leaving lawful issue, the shares of stocks or securities, with accrued profits, bequeathed herein to such deceased, shall be equally divided among the survivors of said grandchildren."

Charles J. Clarke, William Thaw and William M. Hersh were named as executors in the will.

Several children had been born to Charles J. Clarke and to Agnes S. Kennedy since the testator's death. For each of these children, except the last, the executors procured the same number of shares of the same stocks as designated by the testator in his bequest to his living grandchildren.

Preceding the birth of the last child, James King Clarke, the Union Railroad and Transportation Company was dissolved, and its affairs were at the time of this proceeding in process of liquidation.

Its stock, however, had a known value, and two of the executors, Charles J. Clarke and William M. Hersh, contended that under the provisions of the will in question they were bound to provide for this last born child the equivalent of one hundred shares of Union Line stock, with one hundred shares of Pennsylvania Railroad stock or its equivalent.

Mr. Thaw, the other executor, however, contended that the child was entitled only to $10,000 in stocks.

To arrange this dispute, therefore, an amicable action was commenced, wherein Clarke and Hersh, two of the executors, petitioned the court below to put a construction upon the terms of the will, whereupon the court (Hawkins, J.) delivered the following opinion:—

"The intention of Thomas S. Clarke, in the 2d and 3d sections, article 6th of his will, evidently was that his trustees should invest the sum of $10,000 in first-class stocks, to be selected by them.

"The legacies given therein are general. There is no restriction

1 NORRIS—34

as to the company in which the stock shall be procured, nor as to the number of shares. The trustees are left free to select any stocks in a certain class. The description would be answered as well by the procurement of stocks in one company as in another in that class. There are no 'ear-marks' on the given thing, but merely an indication of the class from which it shall be selected. The trustees are simply directed to procure 'stocks,' without any specifications of the kind. To make a legacy specific, a clear intention to do so must be manifested by the testator. The thing given must be so marked as to be susceptible of identification. This is wanting in the present instance : Roper on Leg. 193 ; Blackstone *v.* Blackstone, 3 Watts 335.

" The limitation of the power of the trustees is in the amount to be invested. They are directed to 'procure * * * stocks of the *same amount* and *value* (viz., $10,000) as those' bequeathed to grandchildren *in esse* at the date of the will. It seems to have been the object of the testator to equalize, as far as possible, the legacies given his grandchildren. He placed those of his grandchildren living at the date of the will on an exact equality. He gave them each the same number of shares in the same companies. To those who might thereafter be born, he gave 'stocks of the same amount and value.' What amount and value ? The testator has fixed it at $10,000, for the purpose of equalization. It was entirely competent for him to put any value he chose upon his property, with this view. It was the only mode indeed in which he could accomplish his object. Stocks necessarily fluctuate in value. To-day they may be worth par ; to-morrow double in value, and the next day be worthless. Within the time limited by this testator, years must elapse and great changes in the values of stocks and in the condition of the companies which they represent, must necessarily take place. The testator seems to have recognised this law of change when he authorized his trustees to sell any of the stock which he gave his grandchildren, and invest the proceeds in other securities 'whenever they may deem the change or conversion to be expedient and for the best interests' of said grandchildren. Had the testator intended his trustees to procure stocks in certain companies, the change in values within the time limited for their procurement might have required the expenditure of $20,000 instead of $10,000, and thus exhausted the estate to the prejudice of other beneficiaries, or the stock might become worthless, and thus equalization be defeated.

"When the will was made the stocks which the testator specifically gave to the grandchildren then living were first-class. The language used in the bequest to after-born grandchildren, and the direction to accumulate dividends, evidence an intention that the stocks to be procured for the latter shall all be of the same character,

although not necessarily in the same companies, as those specifically given to the other grandchildren.

" The value of the gift having been fixed by the donor, can those who were appointed to carry out the intention of the testator exceed the limit fixed ?   The will is their warrant.   The amount specified by the testator is an appropriation of so much of his estate to the purchase of stocks, contingent upon the birth of issue, and is the law of the trust.

" The investment should be made in accordance with the foregoing views."

The court then decreed that the executors should invest in first-class stock, to be selected by them, in place of the stock of the Union Railroad and Transportation Company, the sum of $5000 for each and every child that may be born of Charles J. Clarke or of Agnes S. Kennedy, after the date when said Union Railroad and Transportation Company went into liquidation, and before noon of the 4th day of April 1883.

From this decree this appeal was taken.

*Hampton & Dalzell*, for appellants.—To determine the proper construction of the will in question, the intention of the testator, if it can be gathered from the will itself, furnishes the primary rule superior to all rules on the subject: 2 Williams on Executors 1103; per BELL, J., in Bayard *v.* Atkins, 10 Barr 17.   Following this rule the intention of the testator seems very clear that his grandchildren born during his lifetime and those to be born thereafter should be placed on *an equality*.

They are treated of in the same article of the will, and the will is marked as making provision for each class by itself.   They are treated alike as to the quantum of their legacies.   Those of the born grandchildren are specifically designated ; those of the unborn are to be " of the same amount and value."

No distinction is made between them as to their title ; that of each is held by trustees.   The trustees are the same as to both classes.   The trust estate of each is to be managed in the same way.   The times of payment are alike.   Each class takes a like estate.

Nor does the testator seem to have intended any distinction founded upon age.   Each of the born grandchildren, whether older or younger, takes the same bequest as every other.   Each member of that class would then have " stocks of the same amount and value as those bequeathed " to the members of the first class, provided the distribution were made to all at the same period of time.

This result is accomplished by making the provisions of article 6 of Thomas S. Clarke's will take effect at the time of his death, by providing and procuring the legacies for unborn grandchildren out of the residuary estate at that time.

[Clarke's Estate.]

The one hundred shares of Pennsylvania Railroad stock, and the one hundred shares of Union Railroad and Transportation Company stock, given to each of his grandchildren named, were-of the *par* value of $10,000, though of a much greater *market* value. By construing the clause in parenthesis in article 6, section 2 (viz., ten thousand dollars), to refer to *par* value, it will apply as a designation of the value of the stocks specifically named. Taking them as a standard then, the intention of the testator can only be carried out by giving his after-born grandchildren " stocks of the same amount and value."

To define our position then, we contend that the trustees named in article 6 of Thomas S. Clarke's will took immediately at his death, for each of his grandchildren then living, a vested legacy, and for those to be thereafter born a legacy to vest immediately at birth, and that all of these legacies were equal in amount and value, that amount and value being then fixed by that of the legacies given to the grandchildren called by name in the will.

*George Shiras, Jr.*, for appellee.—In this section under discussion we find, in the first place, a legacy of $10,000 to each grandchild born between the prescribed limits ; and, in the second place, a direction to the executors of the mode or kind of investment. The testator could not have felt assured that the requisite amount of stocks would be procurable by the executors, of the identical kinds bequeathed in the first section ; and, in point of fact, just such a contingency has arisen in respect to the stock of the Union Railroad and Transportation Company.

Plainly, therefore, while it may be incumbent on the executors to select stocks of a character similar to those bequeathed to the grandchildren *in esse* at the date of the will, their power of choice is not restricted to any particular stocks. We, therefore, contend that in the case of James King Clarke, a grandchild born since the date of the will and prior, of course, to April 1883, it is the duty of the executors, in the first place, to appropriate out of the residuary estate, left in their hands for that other purpose, the sum of $10,000, and then to invest that sum in stocks prudently selected by them, in pursuance of the trust confided in them by the testator.

Mr. Justice SHARSWOOD delivered the opinion of the court, November 12th 1876.

In studying the will of the testator, Thomas S. Clarke, in order to arrive at his meaning in the second section of article 6, which has given rise to the controversy presented for decision in this case, it is evident that we must consider the whole scope of the instrument in reference particularly to the bequests to his grandchildren.

Two primary intentions, we think, are very manifest. The first

is that he meant to give legacies to his grandchildren, not in money,
but specifically in stocks.  As to such of his grandchildren as were
in being at the date of his will he ordered and directed that his
executors should hold certain stocks, thereinafter specifically men-
tioned, in trust for their sole benefit and use, and then he proceeds
to specify for each of his then living grandchildren by name one
hundred shares of stock in the Pennsylvania Railroad Company
and one hundred shares of stock in the Union Railroad and Trans-
portation Company.  He then orders and directs his executors to
provide or procure out of his residuary estate for each and every
child that might be born of his son, Charles J. Clarke, and his
daughter, Agnes S. Kennedy, after the date of his last will and
testament, and before the noon of the fourth day of April 1883,
stocks of the same amount and value (viz., ten thousand dollars)
as those already bequeathed for the use and benefit of the grand-
children before named.  In further prosecution of the same primary
intention he provides in the next section that his executors shall
have full power and authority, at any time and at all times, to
change or convert any or all of the said before-mentioned stocks
into other stocks, or into other securities which they may consider
good or safe, whenever they may deem the said change or conversion
to be expedient and for the best interests of his said grandchildren,
and the executors are directed to invest the dividends or profits
arising from the said stocks or securities in securities of the United
States or of the state of Pennsylvania, at the expiration of every
six months, or within a reasonable time after receiving the same,
for the use and benefit of his said grandchildren, and that the stocks
or other securities, together with the accrued dividends which may be
received, shall be *delivered* (not converted into money and paid, but
*delivered*) by the executors or trustees to each of his said grand-
children who may be living at the time of his death, or who may
be born of his said son and daughter before the fourth day of April
1883, as each and every of them respectively shall arrive at the
age of twenty-one years.  And after a proviso, unnecessary to
be here referred to, he finally directs that if any of his grand-
children should die before arriving at the age of twenty-one years,
without leaving lawful issue, the shares of stock or other securities,
with accrued profits, bequeathed to such deceased, should be equally
divided among the survivors of the said grandchildren.  It is
evident from these provisions of the will that the testator intended
that stocks should be set aside for each grandchild separately, and
should be held in that form or in the form of other securities into
which they might be changed or converted by the executors under
the power expressly given to them for that purpose, and that the
dividends or profits arising from the said stocks or securities should
be invested only in securities of the United States or of the state

of Pennsylvania, the whole to be delivered over to each grandchild on arriving at the age of twenty-one years.

But there was another primary intention, equally if not more important and prominent, in the mind of the testator. This was, that the legacies to his grandchildren should be equal in amount and value. He makes no distinction between those then living at the date of his will, each having set aside an equal number of shares of the same stocks; and as to those after-born, he expressly declares that they shall be of the same amount and value as those bequeathed to his living grandchildren. These last were not necessarily to be stocks of the same companies, for he declares very explicitly that his executors should *provide* or *procure* (not *shall hold*, which is the language used as to the stocks specially named in the preceding section) out of his residuary estate for each and every grandchild born after the date of his will — not the same stocks, or stocks of the same companies — but stocks, any stocks, of the same amount and value.

If the will had stopped here, it is apprehended that there would be no difficulty in coming to the conclusion at which we have arrived, that the after-born grandchildren would be entitled to have set aside for them, to be provided or procured out of the residuary estate, stocks which should be of the same amount and value as one hundred shares of stock in the Pennsylvania Railroad Company and one hundred shares of stock in the Union Railroad and Transportation Company.

The questions would then remain, what did the testator mean by value, and as such stocks are fluctuating in price, as of what date is that value to be ascertained?

The testator has added, in the clause before us, to the expression "stocks of the same amount and value," these words in a parenthesis, "viz., ten thousand dollars." It is contended that this parenthetical clause means that the executors are to take from the residuary estate the sum of ten thousand dollars in money, and invest that amount for each of his after-born grandchildren as they come into being. But we think this construction is clearly inadmissible. It violates both the primary intentions of the testator. It is in effect a bequest originally of money, not of stocks, and it makes the legacies to the grandchildren unequal—it may be grossly so. It is clear that ten thousand dollars may not be sufficient to procure or provide stocks of the same amount and value as those bequeathed to the living grandchildren, if the market value of those stocks at the time of procurement has much appreciated above that in the contemplation of the testator when he made his will. On the other hand, if they have much depreciated, the amount would be much greater, though the value of the increased amount might be the same as that of the less amount. In either event the shares

[Clarke's Estate.]

of the grandchildren would evidently be unequal, depending upon the fluctuating character of such property. It is not then a bequest of ten thousand dollars to be invested in stocks. That is not, indeed, the proper grammatical construction of the clause. The words "viz., ten thousand dollars" describe the amount and value of the stocks he had before bequeathed to his living grandchildren; that is, that their nominal amount and par value was ten thousand dollars; and this was in fact strictly true. But surely the testator did not mean that the executors should provide or procure out of his residuary estate for his after-born grandchildren any stocks of the nominal amount and par value of ten thousand dollars. Whatever confidence he might have that his executors would act justly and impartially, it is not to be supposed that he meant to invest them with a power and discretion which might entirely frustrate one of the great objects of his will—equality among the objects of his bounty. By "value" he must have meant market value. It is said however that conceding that value meant market value, the testator intended to declare what that value was at the date of his will. There is considerable plausibility in this contention and it very much simplifies the duties of the executor. This appears to have been the view of the learned judge of the Orphans' Court. It was entirely competent no doubt for the testator to put any value he chose upon his property with a view to equalization, but is there enough in this short parenthesis to enable us to say that he meant to do so? Suppose he was mistaken, ought this his declaration of what he thought their market value was at the date of his will to be conclusive? We think not. It falls within the principle of the familiar maxim *falsa demonstratio non nocet*, or, as it is otherwise expressed in an excellent standard work, "as soon as there is an adequate and sufficient definition with convenient certainty of what is intended to pass by the particular instrument, a subsequent erroneous addition will not vitiate it:" Broom's Legal Maxims 630. That by value was meant market value, and that market value at the date of the will we think abundantly clear from a subsequent provision made applicable by him to all the bequests without exception. "I direct," says the testator in article 10, "that in the event of the sale of any of the securities or property herein named by me during my lifetime the full equivalent, *at the value realized by me*, shall be paid to the person or party to whom the same may have been bequeathed herein." We regard this as a key which easily unlocks the difficulty of the clause now in question. It establishes this rule of construction for this will that it is to speak as of its date, and that so far as the interest of the beneficiaries was concerned, it was to be considered as vesting at that time. While it is undoubtedly true that as a general rule a will speaks from the death of the testator, yet it is otherwise when its language

[Clarke's Estate.]

by fair construction indicates the contrary intention : 1 Redfield on Wills 379, and cases there cited.

After what has been said it will scarcely be necessary to consider what has been so urgently pressed by the learned counsel of the appellants, that the legacies to the after-born grandchildren vested at the death of the testator, and that it was the duty of the executors at that time to set aside stocks for the grandchildren who should afterwards be born. How can legacies for unborn children who may never come *in esse* be vested ? And how could the executors set aside stocks for them without knowing how many there would be, if indeed there would be any ? If the whole residuary estate is locked up until April 4th 1883, it is a necessary result of the provisions of the will by which the amount to be appropriated out of that estate is made to depend upon contingencies which may indeed happen before, by the deaths of Charles J. Clarke and Agnes S. Kennedy, but cannot be postponed beyond it.

The appellants, in their petition to the court below, ask that an appropriation be made to James King Clarke, the after-born grandchild in question, out of the residuary estate, of the equivalent of one hundred shares of Pennsylvania Railroad stock and one hundred shares of Union Railroad and Transportation Company stock ; that is, as we understand it, at the present market values of those stocks. We agree entirely with the learned judge of the Orphans' Court that this is not admissible ; for a change in the market value of the stocks might exhaust the estate to the prejudice of other beneficiaries, or the stocks might have become utterly worthless, and thus all equality have been defeated. Had the executors, with wise foresight, sold the stocks set apart for the living grandchildren, and invested the proceeds in other and safe stocks, and the stocks first set aside had become worthless, what would have been the condition of the after-born grandchildren under such a construction? It is true that these stocks may have much appreciated since the date of the will, and the after-born grandchildren will not receive what those then living now have. But that result is unavoidable. From the time these stocks were set apart, the legatees are to be regarded as the owners and entitled to all the advantages of their appreciation. Had the executors converted them into other stocks, which had doubled in value, it could not be contended that the after-born grandchildren would be entitled to stocks equal in value to such subsequent investment. Neither ought they to suffer by their depreciation.

We are of opinion then that the after-born grandchildren as they come into being should have set aside for them respectively stocks of the same market value as one hundred shares of stock in the Pennsylvania Railroad Company and one hundred shares of stock in the Union Railroad and Transportation Company were on the

[Clarke's Estate.]

30th day of May 1867, the date of the will of Thomas S. Clarke, deceased.

> Decree of the Orphans' Court reversed. And now, November 13th 1876, it is ordered and decreed that the executors of Thomas S. Clarke, deceased, set aside from the residuary estate or invest in stocks, to be selected or bought by them, for each and every child of Charles J. Clarke and Agnes S. Kennedy that has been or may be born after May 30th 1867 and before April 4th 1883, such an amount as will be equivalent to the market value of one hundred shares of stock in the Pennsylvania Railroad Company and one hundred shares of stock in the Union Railroad and Transportation Company on the 30th day of May 1867.
>
> And it is further ordered that the costs in the court below and in this court be paid out of the residuary estate of the said Thomas S. Clarke.