WAGNER FREE INSTITUTE v. PHILADELPHIA.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
NO. 3 OF PHILADELPHIA COUNTY.

Argued January 8, 1890—Decided March 3, 1890.

1. Under the constitution of the United States and the decisions of the
   Supreme Court, a charter is ordinarily a contract; but a charter which
   is revocable at the will of the grantor is a quasi contract only, and to
   such a charter the rule of the Dartmouth College case does not apply.
2. Under the constitutional amendment of 1857, and § 10, article XVI. of
   the present constitution, the legislature may alter or revoke any charter
   of incorporation, " whenever in their opinion it may be injurious to the
   citizens of this commonwealth," and that body is the final judge of what
   is injurious, and when.
3. Exemption from taxation is a subject of inherent public interest; and
   under said constitutional provisions the legislature may at any time re-
   peal an exemption of property from taxation contained in a charter
   granted subsequently to 1857, and such repeal may be made by general
   enactment.
4. The effect of the act of April 8, 1873, P. L. 64, is to repeal the exemp-
   tion from taxation of the real estate of religious, charitable and educa-
   tional institutions, excepting that upon real estate, not exceeding five
   acres, which is annexed or attached to the buildings of such institutions:
   Northampton Co. v. Navigation Co., 75 Pa. 461; Wagner Institute's
   App., 116 Pa. 555.

Before STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM
and MITCHELL, JJ.

No. 320 January Term 1889, Sup. Ct.; court below, No.
776 December Term 1887, C. P. No. 3, in Equity.

On February 10, 1888, the Wagner Free Institute of Science
filed a bill in equity against the city of Philadelphia, Henry
Clay and others, praying for an injunction to restrain the de-
fendants from assessing and collecting taxes for the years sub-
sequent to 1884, upon certain real estate which had been given
and conveyed to the plaintiff and the revenue of which was
devoted to its support, but which was not annexed to or oc-
cupied by the institute itself.

On the hearing of the cause, set down upon bill and answer,

wherein the facts shown were as fully appear in Wagner Institute's App., 116 Pa. 555, the court "entered judgment for the defendants." Thereupon the plaintiff took this appeal specifying that the court erred:

1. "In entering judgment for the defendants in the case."

2. In deciding that the city of Philadelphia was entitled to collect taxes from plaintiff's real estate described in the bill, and that the acts of the defendants in regard to such collection were not contrary to the provisions of § 10, article I. of the constitution of the United States.

3. In refusing to grant the injunction prayed for.

*Mr. George W. Biddle* (with him *Mr. W. W. Montgomery*), for the appellant.

Counsel cited: Bank of Penna. v. Commonwealth, 19 Pa. 144; Erie County v. Erie City, 113 Pa. 367; Coatesville Gas Co. v. Chester Co., 97 Pa. 481; Sewickley Bor. v. Sholes, 118 Pa. 165; Hays v. Commonwealth, 82 Pa. 523; Maxwell on Statutes, 157; Brown v. Commissioners, 21 Pa. 37; Harrisburg v. Sheck, 104 Pa. 53; Williamsport Pass. Ry. Co.'s App., 120 Pa. 1; Commonwealth v. Water Co., 94 Pa. 516.

*Mr. Chas. F. Warwick*, City Solicitor (with him *Mr. Robert Alexander*), for the appellees.

Counsel cited: (1) Act of March 9, 1855, P. L. 1866; Section 11, act of March 30, 1864, P. L. 136; Wagner Institute's App., 116 Pa. 555. (2) Act of April 8, 1873, P. L. 64; Section 29, act of April 16, 1838, P. L. 514; Section 3, act of July 2, 1839, P. L. 576; Northampton Co. v. Lehigh C. & N. Co., 75 Pa. 463. (3) Allegheny Co. v. Gibson, 90 Pa. 397; Perkins v. Slack, 86 Pa. 270; Lehigh Iron Co. v. Lower M. Tp., 81 Pa. 484. (4) Zimmerman v. Turnpike Co., 81* Pa. 96; Phila. etc. Pass. Ry. Co.'s App., 102 Pa. 123; Penna. R. Co. v. Bowers, 124 Pa. 183.

OPINION, MR. JUSTICE MITCHELL:

The legal question in this case is identical with that in Wagner Institute's App., 116 Pa. 555, but, in deference to the urgency of counsel for this worthy and deserving institution, we have examined the whole case anew. Briefly stated, the ques-

tion is whether the real estate not occupied by or annexed to the institute building itself, but the revenue from which is devoted to its support, is exempt from taxation.

The institute was chartered by a special act of assembly, March 9, 1855, which it is conceded would not exempt the property now in question. But a supplementary act amending the charter, passed March 30, 1864, contained the following clause, under which the exemption is now claimed: " The cabinet collections and lot of ground on which it is erected, belonging to the said institution, with any gifts, bequests, or endowments, so long as the same shall be used for free lectures, shall be exempt from taxation." The question whether the real estate in controversy is an endowment, within the sense of this clause, was discussed by our Brother GREEN, in 116 Pa. 564, and need not be further enlarged upon.

But the case has been argued, and may be confidently rested, on broader grounds. Counsel have presented two questions: assuming that the real estate in this case is an endowment, First, can the state repeal the exemption? and, secondly, has it done so?

Upon the first question there can be no substantial doubt. The exemption can only exist by virtue of the amended charter of 1864. But this, of course, is subject to the legislative power, under the amendment of 1857 to the constitution, to alter, revoke, or annul any charter thereafter granted. Under the constitution of the United States and the decisions of the Supreme Court, a charter is ordinarily a contract; but a charter which is revocable at the will of the grantor is only a quasi contract, and approaches much more closely to the character of a license. To such a charter the rule of the Dartmouth College case does not apply, and the decisions are uniform to this effect. No question under the constitution of the United States, therefore, arises in this case.

But it is argued that the legislative right of revocation only exists when the privileges granted become " injurious to the citizens of the commonwealth," and that the legislature is not the final and absolute judge of what is so injurious. Expressions from the opinions of this court in several cases are cited in support of this argument, but none of the decisions, examined upon their facts, really sustain the contention of the

appellant here.   The strongest expression is found in Commonwealth v. Railroad Co., 58 Pa. 26, where SHARSWOOD, J., says: "That case (Erie etc. R. Co. v. Casey, 26 Pa. 287) must be considered as authority in this state for the position that the legislature is not the final judge of whether the casus fœderis, upon which the authority to repeal is based, has occurred." This language is quoted with approval by GORDON, J., in Hays v. Commonwealth, 82 Pa. 523, and this latter case, in turn, by the present CHIEF JUSTICE, in Williamsport Pass. Ry. Co.'s App., 120 Pa. 12.   But in Commonwealth v. Railroad Co., the charter involved was granted before 1857, and by its terms limited the power of repeal to the contingency of "misuse or abuse of the privileges granted;" and it was of this provision that Justice SHARSWOOD used the language quoted.   The case itself turned on the railroad company's denial of any violation of its charter since a condoning statute, and the admission of the truth of that defence by the commonwealth's demurrer. Hays v. Commonwealth and Williamsport Pass. Ry. Co.'s Appeal decide only that the present constitution does not repeal charters previously granted; and the general language of the opinions is used with reference to the intent of the instrument, rather than to the power to repeal if the intention to do so were clear.

The language of the constitutional amendment of 1857 is that the legislature may alter or revoke any charter whenever "in their opinion it may be injurious."   The same language is repeated in the present constitution, article XVI., § 10. Exemption from taxation is a subject of inherent public interest.   It is a diminution of the supreme prerogative of the state to raise the revenue necessary to its existence.   It is at all times a legislative question, and we do not see how the right of the legislature to determine whether, in any particular class of cases, an exemption is "injurious to the commonwealth," can be doubted; and by the first section of article IX. of the constitution, the legislature is imperatively restricted to dealing with it by general laws.   We think it clear, therefore, that the legislature, under the authority reserved by the constitution of 1857, could at any time repeal the exemption in the plaintiff's charter, and do so by a general law.

We come, then, to the second question: Has the exemption

granted to the appellant by the charter of 1864 been repealed? This would seem to be no longer open to argument. The act of April 8, 1873, P. L. 64, is entitled "An Act to repeal all laws exempting real estate from taxation," and provides that "all real estate within this commonwealth shall be liable to taxation, . . . . . excepting only therefrom the classes of property specifically exempted from taxation by the twenty-ninth section of the act of 16th April, 1838," as construed by the act of July 2, 1839, etc.; also, "all parsonages owned by any church or religious society, with the lands attached thereto, not exceeding five acres; . . . . . also, all lunatic asylums, almshouses, poor-houses, houses of refuge, penitentiaries and asylums, schools and hospitals supported by the appropriations annually made thereto by this commonwealth, together with the lands attached to the same; and also excepting and exempting from such taxation all charitable institutions founded by charitable gifts or otherwise, the chief revenues for the support of which are derived from voluntary contributions, together with the lands attached to the same; and all laws or parts of laws inconsistent with the provisions of this statute be and the same are hereby repealed." The classes of property specifically exempted by the act of 1838, referred to, are churches, etc., universities, colleges, academies, and school-houses, etc., "with the grounds thereto annexed;" and by the act of 1839 the ground so exempted shall be no more than "five acres of land, together with the improvements thereon, attached to all such religious congregations, universities, colleges," etc. The exemption of every class of institution in which the appellant could possibly be included is thus seen to be restricted, in all three of these acts, to the land annexed or attached to the building itself, and clearly, therefore, does not include property situated as the appellant's which is the subject of this suit. The act of 1873 in express terms repeals all other acts granting exemptions inconsistent with its own provisions; and in Northampton Co. v. Navigation Co., 75 Pa. 461, this court declared that the object of the act was to repeal the large number of special acts upon the statute book, exempting particular properties. "These special laws," says SHARSWOOD, J., "had become a great evil. In the city of Philadelphia, houses and lots, producing large revenues to the

institutions to which they belonged, to the extent in value of more than a million dollars, were thus, by special law, relieved from their share of the local taxes, and the burden proportionally increased on the residue."

As the act of 1873 and the decision quoted are conclusive of the present contention, it is not necessary to go further than to note that no other authority for the exemption has been asserted. Article IX. of the constitution grants no exemption, it is restrictive only; and the act of May 14, 1874, P. L. 158, passed to carry out the intention of the constitution, in enumerating the " institutions of learning, benevolence, or charity " intended to be included, restricts the exemption to the institution itself, " with the grounds thereto annexed, and necessary for the occupancy and enjoyment of the same." We are unable, therefore, to perceive any ground upon which the appellant's contention can be sustained.

Decree affirmed.