York County Agricultural Society, Appellant, *v.*
York County et al.

86

Argued March 15, 1935.

Before KELLER, P. J.,
CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES
and RHODES, JJ.

*George Hay Kain,* with him *George Hay Kain, Jr.,* for appellant.

*John A. Hoober,* with him *Carl R. May, John E. Vandersloot, John E. Brenneman, Robert M. Laird, Charles A. May, F. B. Gerber, Ralph F. Fisher* and *McClean Stock,* for appellees.

OPINION BY PARKER, J., July 18, 1935:

The York County Agricultural Society filed a bill asking for an injunction restraining the County of York, City of York, Borough of West York, Township of West Manchester, and the school districts of that city, borough, and township, the treasurer of the County of York, and various tax collectors of the named municipalities from collecting, or attempting to collect, taxes, penalties, and costs assessed against the real estate of plaintiff for the years 1928, 1929, and 1930. The cause proceeded to final hearing when the bill was dismissed and this appeal was taken. The appellant contends that its real estate is exempted from taxation by

the Special Act of April 4, 1868, P. L. 716, and further that if that act is not available to it, in any event, its real estate is relieved from taxation by virtue of the general laws of the state exempting certain real estate used for religious and charitable purposes. We agree with the court below that, if the appellant is entitled to any relief, it is by virtue of the general law and not by the Act of 1868.

The Act of 1868 exempted from taxation the real and personal estate owned by the agricultural societies of York County and a number of other counties and declared that they should not be subject to taxation for state, county, municipal, or other purposes. The Act of April 8, 1873, P. L. 64 (72 PS 4681), provided, in part, that "all real estate within this Commonwealth shall be liable to taxation for all such purposes as now is or hereafter may be provided by general laws," subject to certain exceptions with which we are not here concerned. In construing the latter act, Mr. Justice Sharswood, in the case of Northampton County v. Lehigh Coal & Nav. Co., 75 Pa. 461, 463, said: "We think it very apparent, as well from the title as the whole scope of the enacting words of the act entitled 'An Act to repeal all laws exempting real estate from taxation,' approved April 8, 1873, P. L. 64, that its object was not to change the course of judicial decisions upon the construction of the general tax laws, but to repeal the large number of special acts upon the statute book exempting particular properties. These special laws had become a great evil. In the City of Philadelphia, houses and lots producing large revenues to the institutions to whom they belonged, to the extent of more than a million of dollars, were thus by special law relieved from their share of the local taxes, and the burden proportionally increased on the residue." It is contended by the appellant that these remarks are dicta and that a contrary conclusion was arrived at in the case of

Rounds v. Waymart Boro., 81 Pa. 395. We do not agree with that suggestion, for the Rounds case involved a different question and special reasons appeared there for the conclusions at which the court arrived, and in the case of Wagner Institute v. Phila., 132 Pa. 612, 19 A. 297, the remarks of Mr. Justice SHARSWOOD were approved and it was definitely held that the Act of 1873 repealed a previous special act exempting real estate from taxation. We are of the opinion that the Act of 1868 was repealed by the Act of 1873.

Sections 1 and 2 of Article IX of the present constitution of this Commonwealth providing that all taxes shall be uniform, excepting as the General Assembly may by general laws provide with reference to actual places of religious worship, places of burial, institutions of purely public charity, and real and personal property of posts and camps of soldiers, etc., and that "all laws exempting property from taxation, other than the property above enumerated shall be void," do not "execute themselves so as to repeal any existing laws providing for the assessment and collection of taxes. These sections, like many others, merely impose restrictions on future legislation, when it shall thereafter be enacted:" Coatesville Gas Co. v. County of Chester, 97 Pa. 476, 481; Evans v. Phillipi, 117 Pa. 226, 237, 11 A. 630; Walker's Appeal, 44 Pa. Superior Ct. 145, 155. However, the Act of May 14, 1874, P. L. 158 (since amended a number of times and supplied by Act of July 17, 1919, P. L. 1021; 72 PS 4701), provided exemptions permitted by Article IX of the constitution. In the case of Phila. v. Masonic Home, 160 Pa. 572, 580, 28 A. 954, the Supreme Court said: "As to the argument that the act of 1871 exempted the home from taxation, the act of 1874, when read in connection with the constitution of 1874, repealed all such exemptions enacted after the constitutional amendment of 1857," and

cited, in support of that conclusion, Wagner Institute v. Phila., supra.

This position is materially strengthened by the facts that after the present constitution was adopted and the Act of 1874 was passed by the legislature providing a general law with relation to exemptions of real estate from taxation, in accordance with the provisions of the constitution, not only was the charter amended three times, but in 1897 the York County Agricultural Society surrendered its charter and received a new charter under the same name, pursuant to the provisions of the Act of June 14, 1887, P. L. 383 (15 PS 1221), thereby receiving *benefits,* particularly the right of eminent domain for the purpose of appropriating lands necessary for the purpose of its incorporation. While the Act of June 13, 1883, P. L. 122 (15 PS 401, et seq.), specifically provided that, in case of amendments to corporations of the *second class,* they should be made subject to an acceptance of the provisions of the constitution, the Supreme Court in the case of Meadville Theo. School v. Hempstead, 290 Pa. 222, 224, 138 A. 747, where a corporation of the first class was involved, said: "By applying for the amendment after the Constitution of 1873 went into effect, plaintiff acquired a benefit under that instrument, and, by Article XVI, section 2 thereof, became subject to its provisions, and liable to regulation by legislation passed pursuant thereto, at least insofar as such regulation did not conflict with any express franchise given by the special incorporating acts, and which remained undisturbed after the amendment was made: Com. ex rel. v. Flannery, 203 Pa. 28 [52 A. 129]."

Section 5 of the act of 1887 (15 PS 1225), which preserved to the corporation certain of its privileges, franchises, and powers, was not intended to embrace such privileges as may have been extended to the corporation voluntarily by the Act of 1868, for to do so

would have nullified the effect of sections 2 and 10 of Article XVI of the constitution read with Article IX. It will be noted that the Act of 1868 was subsequent to the amendment to the constitution of 1838 made in 1857 covering the same subject. To such situation the rule of the Dartmouth College case does not apply.

"The language of the constitutional amendment of 1857 is that the legislature may alter or revoke any charter whenever 'in their opinion it may be injurious.' The same language is repeated in the present constitution, article XVI, §10. Exemption from taxation is a subject of inherent public interest. It is a diminution of the supreme prerogative of the state to raise the revenue necessary to its existence. It is at all times a legislative question, and we do not see how the right of the legislature to determine whether, in any particular class of cases, an exemption is 'injurious to the commonwealth,' can be doubted; and by the first section of article IX of the constitution, the legislature is imperatively restricted to dealing with it by general laws. We think it clear, therefore, that the legislature, under the authority reserved by the constitution of 1857, could at any time repeal the exemption in the plaintiff's charter, and do so by a general law": Wagner Institute v. Phila., supra, p. 615.

It follows that the rights of the plaintiff to exemption from assessment and collection of taxes must be determined by the general act of July 17, 1919, as amended, and it becomes necessary to refer to the facts found by the chancellor. The York County Agricultural Society was organized in 1852 and incorporated April 28, 1855. The charter was amended in 1859, 1876, 1881, and 1893. A more radical change was made in 1897, the facts found by the court with reference thereto being as follows: "At a meeting of the members of the plaintiff corporation held May 12, 1897, it was resolved that the Society, in accordance with the provisions of the Act

of June 14, 1887, P. L. 383, accepted the said Act and its provisions and that the then present Charter of the corporation be surrendered for the purpose of acquiring all the privileges, immunities and franchises of corporations incorporated thereunder for the encouragement of the arts and sciences and of original agriculture and horticulture, and the President and Secretary were authorized and directed to make the necessary certificate required by the said Act and to file the same with the Secretary of the Commonwealth for the purpose of having Letters Patent issued to said corporation. The proper certificate having been filed in the Office of the Secretary of the Commonwealth on June 18, 1897, the Governor granted Letters Patent June 18, 1897, as provided by said Act of June 14, 1887, P. L. 383." The plaintiff has carried on the purposes of its incorporation by holding fairs since 1888 on a single tract of land containing about one hundred acres, located in the four municipalities. On these grounds there are erected a horticultural hall, main exhibition hall, school exhibition hall, two poultry halls, cattle barns, hog pens, sheep barns, horse barns, stables, race track, and grand stand.

It seems to be conceded, and correctly so, by all concerned that the land, if not operated for profit and used *exclusively* for an educational purpose such as agricultural and horticultural exhibits and the exhibiting of horses, cattle, pigs, sheep and the like and numerous other activities usually found at a county fair, is then entitled to exemption from taxation: Nat. Farm School v. Commissioners of Bucks County, 87 Pa. Superior Ct. 231. The chancellor, however, has found as a fact that portions of the ground were rented for circuses, pageants, demonstrations, and a miniature golf course, businesses with which the plaintiff had no connection. Such activities are certainly not those which come within the purview

of the exempting legislation: Am. Sunday School Union v. Phila., 161 Pa. 307, 29 A. 26; Pocono Pines A. & S. Schools v. Monroe County, 29 Pa. Superior Ct. 36; U. of P. Christian Assn. v. Phila., 75 Pa. Superior Ct. 516, 519; Laymen's Week-End R. L. of Phila. v. Butler, 83 Pa. Superior Ct. 1. "It has been uniformly held, in the construction of the statute, that exemption does not result from the fact that profits, realized in what may be called the business activity of the institution, are devoted to its charitable purposes:" Dougherty v. Phila., 314 Pa. 298, 304, 171 A. 583. In Contributors to Penna. Hospital v. Delaware County, 169 Pa. 305, 308, 32 A. 456, Mr. Justice MITCHELL tersely and clearly marked the defining line between those cases where the receipt of income deprives the corporation of its exemption, saying: "Property which is not used directly for the purposes and in the operation of the charity, but for profit, is not exempt, and the devotion of the profit to the support of the charity will not alter this result. Of this class of cases Am. Sunday School Union v. Philadelphia, 161 Pa. 307, is the exemplar and authority. But property which is used directly for the purposes and in the operation of the charity is exempt, though it may also be used in a manner to yield some return and thereby reduce the expenses." The various activities to which we have referred and for which the lands were rented to strangers were not in any way associated with the charitable purposes of the plaintiff.

If the plaintiff is, in fact, entitled to a partial exemption only, equity does not have jurisdiction. "As part of the property is not exempt from taxation it follows that the bill in equity was rightly dismissed:" Laymen's Week-end R. L. of Philadelphia v. Butler, supra, p. 6. The remedy of plaintiff, if any, was an appeal from the tax assessment: Dougherty v. Phila., supra; Dougherty v. City of Phila., 112 Pa. Superior

Ct. 570, 578, 172 A. 177. In this connection, we call attention to the case of Dougherty v. Phila., 314 Pa. 298, cited above, as applicable to the facts found in this case, wherein Mr. Justice LINN said (p. 305): "In Phila. v. Barber, supra, [160 Pa. 123, 28 A. 644] we said: 'Part of the building is used solely by the church, and part is rented out for school purposes. The rooms being all under the same roof makes no difference in principle. The parts rented, and producing income are liable to taxation. There is in fact no express warrant in the act for dividing the building for purposes of taxation and exempting any part of it when other parts produce income. But such division was sustained by Judge ALLISON in Association v. Donohugh, 7 W. N. 208, upon grounds of equity and the broad intent of the statute and has been received with general acquiescence.' See, also, Board of Home Missions v. Phila., 266 Pa. 405, 109 A. 664. Since that time the practice of exempting part of a building from taxation has become common and the right to judicial review has been provided by the legislature. Like claims of over-assessment, the refusal of claims for exemption must be tried on the law side of the court in accordance with the statute."

We are all of the opinion that the remedy, if any, of the plaintiff is on the law side of the court through the channels provided by the legislature.

The order is affirmed and the appellant is directed to pay the costs.