Young Men's Christian Association of Philadelphia, Appellant, *v.* Philadelphia et al.

Argued October 9, 1939.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, Rhodes and Hirt, JJ.

*Franklin S. Edmonds,* of *Edmonds, Obermayer & Rebmann* and *J. Warren Brock,* for appellant.

*Abraham L. Shapiro,* with him *Abraham Wernick,* Assistant City Solicitors, and *Joseph Sharfsin,* City Solicitor, for appellee.

OPINION BY KELLER, P. J., March 2, 1940:

This suit in equity is concerned with the City Sales Tax ordinance of Philadelphia, adopted February 8, 1938, but since repealed, which imposed a tax of two per centum upon the amount of every sale in the City of Philadelphia of:

"(a) Tangible personal property sold at retail, except those articles described in Schedule 'A' below;[1]

(b) Gas, electricity, refrigeration and steam, and gas, electric, refrigeration, steam, telephone and telegraph service, for domestic or commercial use;

---

[1]                    "SCHEDULE A.

"Cereals and cereal products;

Milk and milk products;

Meat and meat products;

Fish and fish products;

Egg and egg products;

Vegetables and vegetable products;

Fruits, spices and salt;

"Sugar and sugar products, other than candy and confectionery;

"Coffee and coffee substitutes, wines and liquors, beer and other similar malt beverages; tea, cocoa, and cocoa products; other than candy and confectionery;

"Water, when delivered to the consumer through mains and pipes;

"Drugs and medicines sold upon a physician's prescription;

"Newpapers and periodicals.

"Sales or services by or to the State of Pennsylvania or City of Philadelphia, and sales or services by or to semi-public institutions, and sales or services upon which the State of Pennsylvania and City of Philadelphia are by virtue of the provisions of the Constitution of the United States or otherwise without power to impose a tax, shall not be subject to tax hereunder."

(c) Food and drink (other than alcoholic beverages) and entertainment in restaurants, cafes and similar establishments, including in the amount of such receipts any cover or minimum or other charge made to patrons ......"

It has special reference to the construction of the following clause from Schedule "A" (which contained the exceptions from the tax imposed by the ordinance):

"...... sales or services by or to semi-public institutions, ...... shall not be subject to tax hereunder."

The word "semi-public" had been previously defined in the ordinance as follows:

"(g) The word 'semi-public' means those charitable and religious institutions which are supported wholly or in part by public subscriptions or endowment and are not organized or operated for profit."

It is not disputed that the plaintiff appellant is a charitable institution supported in part by public subscriptions or endowment, and that it was not organized for profit, and having regard to its activities as a whole, that it is not operated for profit, although certain activities conducted by it as incidental to its main charitable purposes return a profit, which is used to reduce the deficit which it incurs in its general charitable work.[2] It brought this bill to enjoin the city authorities from enforcing the said ordinance against it and imposing the tax upon sales or service by or to it.

The lower court held that as to the sales or services by or to the appellant in connection with certain ac-

---

[2] The Chancellor made, inter alia, the following findings of fact:

"16. These activities are essentially commercial in character.

17. These activities are operated for profit.

18. The profits made from these activities are paid into the general treasury of the plaintiff Association, and are used to reduce the deficit which it incurs in its efforts to carry into effect its charitable objects and purposes."

tivities conducted by it as incidental [3] to its main charitable purposes, and on which it received an immediate profit over and above their cost, the tax was collectible, and dismissed the bill. We think the court's construction of the ordinance was too narrow and limited, and that the decree should be reversed.

In the first place, if the appellant is a 'semi-public institution', as defined in the ordinance, it is specifically excepted from the payment of any sales tax on the sales and service subjected to such tax by the ordinance.

It may be well at the outset to consider again the subjects which are taxable under the ordinance. They are:

(a)—*Tangible personal property sold at retail,* which do not fall within the *thirty odd subdivisions* excepted in Schedule "A", supra.

(b) [1]—Sales of gas, electricity, refrigeration and steam for domestic or commercial use.

(b) [2]—Gas, electric, refrigeration, steam, telephone and telegraph *service* for domestic or commercial use.

(c)—Food, drink and entertainment in restaurants, cafes and similar establishments, and the *service* necessary for preparing and furnishing the same, including cover and minimum charges.

Next, the tax is to be paid by the *purchaser* [4] to the vendor, the latter to receive the tax for the City of Philadelphia and be liable for its payment to the City. The only classes of service taxable under the ordinance are gas, electric, refrigeration, steam, telephone and telegraph, for domestic or commercial use, and such service as may be furnished in connection with food, drink and entertainment in restaurants, cafes,[5] etc.

---

[3] The operation of kitchens, dining rooms, lunch rooms, cafeterias, dormitories, recreation rooms, gymnasiums and swimming pools, and the sale of personal property in connection therewith.

[4] In connection with 'service', purchaser means the person to whom the taxable service is rendered.

[5] The ordinance provides that the words 'sale' or 'selling' "may

Further, the ordinance specifically provides that "sales or service *by or to* semi-public institutions ...... shall not be subject to tax"; that is, as to *sales by them* or *services,* if any, *rendered by them,* they are not required to collect the tax from the purchaser and pay it over to the City, and as to *sales to them* or *services rendered to them,* they are relieved of paying the tax to the vendor. This certainly contemplates that "semi-public institutions" may *make sales and render service to purchasers,* or there would be no point in excepting such institutions from the tax on "sales or services *by* ...... semi-public institutions." To that extent, certainly, the ordinance contemplated a departure by such institutions from the activities of a public charity, which, in its narrowest sense, sells nothing and is supported wholly by public subscriptions and contributions or endowment; and may be said to recognize that many institutions organized for charitable purposes and supported in part by public subscriptions or endowment, do engage in certain incidental activities, of a commercial nature, the proceeds of which, and any profits derived therefrom, are devoted to the general charitable work of the institution and applied to no alien or selfish purpose. This is somewhat similar to the clause contained in our Act of Assembly of April 9, 1921, P. L. 119, which after reciting the institutions to be embraced within the constitutional exemption of "in-

include the rendering of any service *specified* in section 2"; the only service *specified* in section 2 is in subsections (b) and (c), that is (b) gas, electric, refrigeration, steam, telephone and telegraph service and (c) food, drink and entertainment in restaurants, cafes, etc. See also the fourth paragraph of the opinion of Mr. Justice STONE in *McGoldrick, Comptroller v. Berwind-White Coal Mining Co.,* 309 U. S. 33, in which he refers to the sales tax laid by Local Law No. 24 of 1934 (published as No. 25) of the City of New York "upon purchasers of tangible personal property generally (except foods and drugs furnished on prescription), of *utility services* in supplying gas, electricity, telephone service, etc., and of meals consumed in restaurants."

stitutions of purely public charity," to wit, "all hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence or charity . . . . . . founded, endowed or maintained by public or private charity," added the proviso, "Provided That the entire revenue derived by the same be applied to the support of and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose."

Offhand, we know of no 'service', within the category established by this ordinance, which is sold or rendered by a charitable institution, except the service incidental to the cooking, preparing and furnishing of food, drink and entertainment in connection with dining rooms, restaurants, cafes or cafeterias, etc., maintained by certain of such institutions as auxiliary to their main charitable purposes. Certainly, so far as we know, no institution of charity is engaged in the business of supplying gas, electric, refrigeration, steam, telephone or telegraph service to consumers for domestic or commercial use; and the ordinance, in its exempting clause, evidently had in mind the *incidental* furnishing of restaurant, etc., service by a charitable institution, in connection with its main charitable work.

The expression used in this ordinance, 'semi-public institutions' is not familiar to, or in accustomed use in the law of Pennsylvania. We have not been able to find a prior instance of its use in any statute or municipal ordinance in ;this Commonwealth. It was imported bodily, along with most of the rest of the ordinance from the City of New York, where a similar sales tax was adopted in 1934. See Local Laws of New York City, (1934) No. 20 (published as No. 21) as amended by No. 24 (published as No. 25). The definition of a semi-public institution first appears in the amendment, published as No. 25, and is absolutely identical in language with that herein quoted from the Philadelphia ordi-

nance. The ordinance having been imported almost bodily from the Local Laws of New York City, where it was in comparatively successful operation for nearly four years at the time when it was enacted in Philadelphia, it is only reasonable that expressions and definitions unfamiliar to our laws and judicial decisions, which were copied exactly from the New York Local Laws, were used, and were intended to be used, in the same sense and with the same meaning as the same expressions had been employed in New York City, and to be subject to the same interpretations which had been placed by the courts of New York on those terms and expressions.

It so happens that the very same question which is under consideration here arose in New York, in connection with the Y. M. C. A. of the City of New York— which carries on incidental activities practically the same as the plaintiff in this case—and had been finally settled by the highest appellate court of the State of New York in accord with this appellant's contention prior to the adoption of the Philadelphia ordinance. In *Young Men's Christian Assn. of the City of New York v. City of New York,* 287 N. Y. S. 287, 159 Misc. 539 (June 10, 1935), Mr. Justice COHN of the Supreme Court, in circumstances almost identical with this one, found the Y. M. C. A. to be a semi-public institution as defined in Local Law No. 24 (1934) [published as No. 25], p. 164, that is to say, "a charitable and religious institution supported in part by public subscription and endowment and ...... not organized or operated for profit. By express provision of law it is therefore free from the tax imposed under said law. Judgment for the plaintiff." The learned court below, somewhat cavalierly, brushed this case aside, saying, "we believe it too meagerly reported to be of any great value. We do not know whether plaintiff there conducted any of its operations for a profit, whereas here ...... certain facilities of the Association are 'operated for profit' ".

An examination of that case and its further developments, including the record on appeal to the Court of Appeals, would have shown that the Y. M. C. A. of New York City was conducting incidental activities for profit along precisely the same lines as the Y. M. C. A. of Philadelphia. See appellant's brief pp. 24-26 and appendix, Exhibits A and B, pp. 1a-13a—whether a profit was actually realized from each of the various activities, is, as the appellees properly maintain, immaterial. The judgment of the Supreme Court was affirmed June 22, 1937 by the Appellate Division, 251 App. Div. 821, 298 N. Y. S. 191, and by the Court of Appeals on January 4, 1938, 276 N. Y. 619, 12 N. E. 2d 605.

The same question came up also in the Appellate Division of the Supreme Court on an appeal from the decision of the City Comptroller in *New York University v. Taylor* 251 App. Div. 444, 296 N. Y. S. 848 (June 22, 1937) where the determination of the Comptroller that the University was taxable under the Sales Tax Local Act was reversed and annulled; affirmed by the Court of Appeals, January 4, 1938, 276 N. Y. 620, 12 N. E. 2d 606.

It would seem that in New York the term "institution of public charity" or "public charitable institution" is limited to charitable institutions established, controlled, maintained and administered by the state or a governmental subdivision of the state, while a semi-public charitable institution is a private institution supported wholly or in part by public subscription or endowment and not organized or operated for profit. This distinction was considered by our Supreme Court, in relation to the phrase in the Constitution of 1873 (Art. IX, sec. 1), "institutions of purely public charity," in *Donohugh's Appeal,* 86 Pa. 306, 318 (1878). In that case, following the full discussion of the phrase by Judge MITCHELL of the Court of Common Pleas No. 2 of Philadelphia, (afterwards Chief Justice MITCHELL) the court said: "The word 'purely' must be interpreted [1] so

as to confine its qualifications of a 'public charity' to those institutions solely controlled and administered by the state herself, or [2] so as to extend it to private institutions for purposes of purely public charity, and not administered for private gain. We prefer the latter interpretation, as declaring the true meaning of the constitution and subserving best the public interest." That construction or interpretation has been followed consistently in this State ever since. We may say that in New York, the phrase "public charity", or "public charitable institutions" corresponds generally with the first and narrower interpretation in Donohugh's Appeal, and that "semi-public institution" is included within the second or enlarged interpretation in our state, and that both are comprehended by *our* phrase "institutions of purely public charity."

While we do not mean to rule that those decisions are absolutely controlling here, they are very persuasive (59 C. J. 1068) in this instance, where the ordinance adopted precisely the same term or expression—one wholly foreign to our law—after the Court of Appeals of New York had passed upon and determined its meaning and had ruled the Y. M. C. A., in all its activities, exempt from the tax.

As we said, at the outset, on the face of the ordinance, appellant is exempt. The exemption clearly applies to it if it is a charitable or religious organization, supported wholly or in part by public subscriptions or endowment and not organized or operated for profit. We think the admitted facts clearly establish that it is.

It is the *institution* itself—not some incidental activity of it—which is excepted from the tax in the ordinance, and no one can justly contend, from the facts, that the Y. M. C. A. of Philadelphia is not a charitable or religious organization, supported in part by public subscriptions or endowment, and that it—that is the *institution*—is not organized or operated for profit, although certain incidental activities may produce reve-

nue greater than their cost, which is applied to the reduction of the general deficit. A somewhat analogous ruling was recently made by our Supreme Court in *Fixl's Appeal,* 336 Pa. 177, 7 A. 2d 336, where it was held that a hotel keeper who conducts a dining room and bar for the convenience of guests and *sells therein* candy, cigars and other merchandise, is not a vender of merchandise within the meaning of the Mercantile License Tax Act of May 2, 1899, P. L. 184, as amended by Act of May 10, 1929, P. L. 1709, sec. 1, and is not subject to the tax there imposed. See also *Wellsboro Hotel Company's Appeal,* 336 Pa. 171, 7 A. 2d 334, which held that a hotel, which conducts a dining room for the convenience of its guests, is not subject to the restaurant mercantile license tax imposed by the Act of April 25, 1907, P. L. 117, sec. 1.

The appellees chiefly rely on the case of *Y. M. C. A. of Germantown v. Phila.,* 323 Pa. 401, 187 A. 204, which was concerned with the claim of that plaintiff for exemption from taxes which had been assessed on that part of its real estate which was used for a dormitory; the Court holding they were not so clearly "necessary for the occupancy and enjoyment" of that part of plaintiff's building in which its work of charity or benevolence was carried on as to entitle it to exemption from paying taxes on the dormitory.

The Court, in that case, did not dispute that the Y. M. C. A. was an institution of purely public charity, within the constitutional provision (Art. IX, sec. 1), see page 408; *University of Penna. Christian Assn. v. Phila. et al.,* 75 Pa. Superior Ct. 516, 518; *Betts v. Y. M. C. A.,* 83 Pa. Superior Ct. 545, 547-550; but the statute [6] under consideration in that case—enacted under the constitutional provision aforesaid—provided (sec. 204) : "The following *property* shall be exempt from all county, city, borough, town, township, road,

[6] Act of May 22, 1933, P. L. 853, sec. 204.

poor and school tax, to wit:......(c) all hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence or charity, with the *grounds thereto annexed and necessary for the occupancy and enjoyment* of the same founded, endowed and maintained by public or private charity, ......"; and further provided in subsection (1) that all property "other than that which is in actual use and occupation for the purposes specified in this section, and all such *property from which any income or revenue is derived* other than from recipients of the bounty of the institution or charity, shall be subject to taxation ......" (Italics supplied). The decision was in accord with the long line of cases from *American Sunday School Union v. Phila.*, 161 Pa. 307, 29 A. 26, to *Dougherty v. Phila.*, 314 Pa. 298, 171 A. 583, which hold that those portions of a building owned by a purely public charity which are rented out for revenue or used for commercial purposes, are not exempt from real estate taxation.

Counsel for appellant justifiably points out that the term "institution of charity" may have two separate and distinct meanings: The term sometimes is used to designate a charity, or charitable corporation or organization, as an entity; and the term at other times is used to refer to the physical plant, building or premises, which is being used and occupied by a charitable organization in connection with its charitable objects and purposes. This distinction would seem to be clear, and it is equally clear that in the above quoted *statutory* provision, the said term, "institution of charity," is used to refer to, or designate, the physical plant, building or premises occupied by a charitable corporation or organization. Thus, in the statute, the use of the words, "The following *property* shall be exempt from all......tax, to wit: ...... *institutions* ...... *of charity* ......*,*" clearly indicates that the term, "institutions of charity" refers to the physical plant or building used and oc-

cupied by a charitable organization; this construction of the provision being further indicated by the addition of the words, "with the grounds thereto annexed, etc." "Grounds" are obviously not "annexed, etc." to a charitable organization regarded as an entity,—"grounds" are "annexed etc." to the physical plant or building used and occupied by a charitable organization. This distinction is also important because it explains the actual holding of the Supreme Court in the Germantown Case. That is to say, from a careful reading of the opinion in that case, it is evident that Justice MAXEY also used the term, "institution of charity", to refer to the physical plant or building used and occupied by a charitable organization. Such was the meaning which had been attributed to that term in the earlier cases, and that fact was recognized by Justice MAXEY, in his citations from *Wagner Institute v. Phila.*, 132 Pa. 612, 617, 19 A. 297; *White v. Smith,* 189 Pa. 222, 227, 42 A. 125.

In the present case it is not the property of the charitable institution which is excepted from the tax imposed by the ordinance, but the *institution itself,* provided it comes within the definition of a semi-public institution as declared in the ordinance, as this appellant does.

The expression in the constitutional provision (Art. IX, sec. 1, supra) is broad enough to apply to the *institutions* of purely public charity, no less than their property, real and personal.

Nor can we agree with counsel for the appellees that if appellant's contention is sustained the ordinance would in this respect violate the constitutional provision above referred to (Art. IX, sec. 1) that "All taxes shall be uniform upon the same class of subjects, within the territorial limits of the authority levying the tax," etc. City ordinances are, of course, subject to this constitutional provision, no less than statutes of the Commonwealth (*Lighton v. Abington Twp. et al.,* 336 Pa.

345, 353, 9 A. 2d 609); but where authority is given the city by the General Assembly to lay the tax, the exceptions authorized by the constitutional provision in the same section, may also be allowed, unless the statute expressly forbids it; and as we have seen, the same section of the Constitution authorizes the exemption from taxation of "institutions of purely public charity," not merely the property of such institutions.

This ordinance was enacted under the authority of the Act of August 5, 1932, P. L. 45, commonly known as the Sterling Act. That Act does not forbid the granting of exemptions within the constitutional provision aforesaid. The constitutionality of the ordinance, except as respects certain minor features not here involved, was upheld by the Supreme Court in *Blauner's Inc. et al. v. Phila.,* 330 Pa. 342, 198 A. 889. The point that the sales tax ordinance violated Art. IX, sec. 1 of the Constitution of Pennsylvania, which requires uniformity of taxation, was specifically raised in that case—see appellant's statement of questions involved (No. 4) in No. 195 January Term, 1938, and (No. 3) in Nos. 200 and 201 January Term, 1938, and the discussion in the brief of the appellee, Receiver of Taxes, pp. 34-45—and while it was not specifically referred to in the court's opinion, it was no doubt considered.

Furthermore, the appellant suggests that schedule A, which includes the exception from taxation here relied upon, may be sustained on the basis of classification. See *Turco Paint & Varnish Co. v. Kalodner,* 320 Pa. 421, 431-5, 184 A. 37. It would seem that a classification which excepts, from the tax imposed, sales of cereals and cereal products, milk and milk products, meat and meat products, fish and fish products, egg and egg products, vegetables, fruits, coffee, sugar, drugs and medicines, newspapers and periodicals, might properly be extended to sales by or to institutions of public charity, which are supported wholly or in part by public

346

subscriptions or endowment and are not organized or operated for profit.

All of the assignments of error but the second are sustained. The decree is reversed and the record is remitted to the court below with directions to enter a decree in accordance with the first and second prayers of the plaintiff's bill. Costs to be paid by the City of Philadelphia.