# Beedle v. Borough of Canonsburg et al.

182

*Zeman & Zeman*, for plaintiff.

*George J. Modrak* and *Marriner, Wiley & Marriner*, for defendants.

CARSON, J., April 28, 1952.—Plaintiff, Fred A. Beedle, filed a bill in complaint against defendants, the Borough of Canonsburg, A. J. Bodenham, P. M. Willis, Joseph A. Yates, Henry Norwood, Clinton Stevens, Anthony Szalanski, Fred Terling, Bernard Kobosky, and Fred Lanzy, members of the Council of the Borough of Canonsburg; Carl J. Gessler, secretary of the Borough of Canonsburg; and Fred Caruso, burgess of the Borough of Canonsburg. Defendants filed a joint answer. Plaintiff alleged, inter alia, that defendant corporation enacted three ordinances for the levy and collection of taxes for general purposes, i.e., ordinance no. 682, a tax on admissions to amusements; ordinance no. 683, a tax on bowling alleys, pool tables, juke boxes, mechanical amusement devices, and ordinance no. 684, a one percent tax upon salaries, wages and commissions. Counsel for plaintiff, in their brief and argument, have limited their attack to ordinance no. 682, and frankly advised court that they were abandoning their attack upon ordinances nos. 683 and 684.

The case was bitterly contested; both sides were represented by able counsel. The record is unduly lengthy and the numerous exhibits are voluminous. Only a few of the exhibits have been copied and made

a part of the stenographic record. Much of the voluminous record arose from plaintiff's attack upon ordinances nos. 683 and 684, and counsel for defendant have requested findings and conclusions thereon. We do not deem it necessary to lengthen this adjudication by making findings of fact and conclusions of law and preparing a discussion of the law relating to the abandoned complaints. The trial of the case, the transcription of this lengthy record by the court reporter, together with the delay incident to the preparation and filing of requested findings of fact and briefs, have delayed too long the decision in this case.

We shall, therefore, limit our findings of fact, conclusions of law, and discussion, to the issues remaining to be adjudicated. Plaintiff contends that ordinance no. 682, "The Amusement Tax Ordinance", is excessive, unreasonable, discriminatory and lacks the uniformity required in the levying of any tax under the Constitution, laws and decisions of the courts of Pennsylvania.

Plaintiff owns and operates in defendant borough two motion picture theatres. These were the only motion picture theatres in the borough. Plaintiff avers that the tax on admissions would produce $7,500 per year revenue from his theatres, and that substantial sums of money would be produced by said ordinance from tax on theatrical performances, operatic performances, carnivals, shows, concerts, sports events, swimming and bathing pools, vaudeville shows, side shows, amusement parks, dancing, billiard games, athletic contests, and other sports, pastimes and recreations.

Plaintiff averred, and several of individual defendants admitted on the witness stand, that the amusement tax was enacted for the purpose and with the intention of taxing only the business of plaintiff, and

that the exemption clauses in the ordinance were intentionally placed therein in order to exonerate others in the same class of taxpayers, whose businesses would otherwise have been taxable, and that defendants were without authority to exonerate such persons.

Plaintiff prayed that defendants be enjoined from enforcing the provisions of ordinance no. 682.

### Findings of Fact

1. The Borough of Canonsburg is a political subdivision of the Commonwealth of Pennsylvania. The Council of the Borough of Canonsburg is composed of nine members and at the time of the occurrence involved in this case, the council was composed of A. J. Bodenham, P. M. Willis, Joseph A. Yates, Henry Norwood, Clinton Stevens, Anthony Szalanski, Fred Terling, Bernard Kobosky and Fred Lanzy. Fred Caruso is the burgess of the Borough of Canonsburg. Carl J. Gessler is the secretary of the Borough of Canonsburg. A. J. Bodenham is the president of the Council of the Borough of Canonsburg.

2. On March 2, 9 and 16, 1951, the Borough of Canonsburg, acting through its council and properly constituted officers, caused to be published in the Daily Notes, a newspaper of general circulation published in the Borough of Canonsburg, Washington County, Pa., notice of intention to adopt an ordinance under the provisions of the Act of June 25, 1947, P. L. 1145, as amended by the Act of May 9, 1949, P. L. 898, providing:

"For the levy, assessment and collection of a borough tax, for general revenue purposes, upon the privilege of admission to any amusement within the limits of the Borough of Canonsburg, stating therein that the amount of the annual revenues to be derived from the said tax was estimated to be approximately $3500.00."

3. Pursuant to this notice of intention, the Council of the Borough of Canonsburg, on March 26, 1951, enacted an ordinance designated as ordinance no. 682, providing for the levy and collection of a tax for general purposes, on admissions to amusements within the Borough of Canonsburg. This ordinance was presented to the burgess for approval, but the burgess did not approve or sign this ordinance nor did he veto it. The burgess did not return the ordinance at the regular meeting of the Council next succeeding its presentation to him, to wit, on April 2, 1951, and the ordinance thereby became operative as a matter of law.

4. Ordinance no. 682, called the "Amusement Tax Ordinance", imposes a tax at the rate of five percent of the price of admission on each and every amusement within the Borough of Canonsburg, and further provides that the person conducting such amusement shall be responsible for collecting the tax, and further defines the term "amusement" in section 1($b$) thereof, as follows:

"The term 'amusement' shall mean all manner and form of entertainment including, among others, the following: theatrical performance, operatic performance, motion picture exhibition, sound motion picture exhibition, carnival, circus, show, concert, sports event, swimming or bathing pool, vaudeville show, side show, amusement park and all forms of entertainment therein, dancing, golf course, bowling alley, billiard game, athletic contest, and any other form of diversion, sport, pastime, or recreation for which admission is charged or paid."

5. Ordinance no. 682 provides exemption from the tax in the following language:

"*Provided:* that 'amusement' shall not include any form of entertainment accompanying or incidental to the serving of food or drink or to the sale of mer-

chandise, where the charge for admission is wholly included in the price paid for refreshment or merchandise.

*"Provided Further:* that 'amusement' shall not include any form of entertainment, the proceeds of which, after payment of reasonable expenses, inure exclusively to the benefit of religious, educational, or charitable institutions, societies, or organizations, veterans' organizations; or police or firemen's pension organizations."

6. Ordinance no. 682 was not to become effective until May 1, 1951.

7. Plaintiff, Fred A. Beedle, owns and operates two motion picture theatres in the Borough of Canonsburg, one located at Nos. 10-14 East Pike Street, known as the Alhambra Theatre, and the other located at Nos. 30-32 East Pike Street, known as the Continental Theatre, and that these are the only two moving picture theatres in the Borough of Canonsburg.

8. The council in budgeting for the year 1951, estimated that the annual revenues to be derived from the tax would be approximately $3,500.

9. Prior to the adoption of the budget and the enactment of ordinance no. 682, plaintiff informed the council that, based on his previous experience and the records of his business, a tax at the rate of five percent of the price of admissions would produce the sum of $7,500 per annum from admissions to plaintiff's theatres alone.

10. The Borough of Canonsburg operates and maintains a public swimming pool and charges admissions to this pool, which swimming pool is located within the corporate limits of the Borough of Canonsburg.

11. The School District of the Borough of Canonsburg owns and maintains an athletic field, which is located within the corporate limits of the Borough of Canonsburg, known as the Canonsburg Memorial

Stadium, which is used for football, baseball and other athletic contests. The School District of the Borough of Canonsburg conducts football, baseball and other events in this stadium to which admissions are charged by the School District of the Borough of Canonsburg, and also rents the stadium to other school districts and individuals who stage events to which admissions are charged.

12. During the year 1949, in games in which Chartiers Township School District was the home team, there were 6,662 admissions to the football games from which the school district realized the sum of $3,704.86; that for the year 1950, there were 2,315 admissions to the football games from which the school district realized the sum of $1,316.75.

13. During the year 1949, in games in which Cecil Township School District was the home team, the receipts were $2,185.71; and for the year 1950, the receipts were $1,435.05.

14. During the fiscal year ending July 1, 1949, in games in which Canonsburg Borough School District was the home team, the receipts were $18,236.25; for the fiscal year ending July 1, 1950, the receipts were $16,472.11; for the fiscal year ending July 1, 1951, the receipts were $14,064.47.

15. For the year 1949, the admissions at the Canonsburg Swimming Pool were 25,071 and the receipts were $5,799.55; and for the year 1950, the admissions were 24,104 and the receipts were $4,282.40.

16. The council was informed prior to the enactment of the ordinance, that, as a matter of law, the tax could not be collected on admissions to the Canonsburg Swimming Pool and the Canonsburg Memorial Stadium.

17. In voting on the enactment of the ordinance, the members of the council were informed that the tax would not be collected on admissions from the

Canonsburg Swimming Pool and the Canonsburg Memorial Stadium.

18. The Council of the Borough of Canonsburg in enacting ordinance no. 682, did not intend to collect any tax on the admissions to the Canonsburg Swimming Pool or the Canonsburg Memorial Stadium.

19. Ordinance no. 682 provides:

"That the Burgess may in any' case direct the Chief of Police to receive any tax under this Act, and to pay over such monies to the Borough Secretary at the earliest opportunity."

20. The only amusements, other than the theatres, which the council proposed to tax under ordinance no. 682, were pool rooms, bowling alleys, dances and carnivals; there were but five dances and two carnivals in the borough during the year 1950, and the total estimated revenues under the ordinance from sources other than the theatres was estimated to be the sum of $181.

21. Amusements conducted by fraternal societies were not to be taxed under this ordinance for the reason that, on legal advice, they were to be considered in the nature of charitable institutions.

## Discussion

The record shows that the enactment of ordinance no. 682 by the officials of the Borough of Canonsburg was made with knowledge that the entire burden of taxation, due to the form of the ordinance and the exemptions therein, would fall upon one class of amusement patrons, i.e., the theatre patrons. The patrons of all other amusements were designedly and intentionally exempted from the provisions of this tax ordinance. The testimony of the individual councilmen shows that they did not intend that any income would be derived under the ordinance from swimming pools, athletic fields, entertainments by the various societies,

organizations, veterans' organizations, police and firemen's pension organizations, or fraternal organizations.

The councilmen testified that they had exempted the patrons of the swimming pool because council had been informed that the opinion Borough of Wilkinsburg v. Wilkinsburg Borough School District et al., 365 Pa. 254, prohibited the collection of any amusement tax from a municipal swimming pool or municipal stadium. The opinion, in fact, only relieved defendant municipality of the burden of collecting the tax. Mr. Justice Horace Stern (p. 256) said:

"There is no question as to the legality, under the authority granted by the Act of 1947, of the tax imposed by the borough on the privilege of attending any amusement, or as to the right of the borough to compel all persons, co-partnerships, associations and corporations within its jurisdiction to act as its agents in collecting the tax."

The solicitor for defendant borough testified:

". . . we have specifically exempted in our ordinance athletic events and admissions to nonprofit organizations. I might explain that, during the time the budget was under discussion, the Wilkinsburg Borough case came up, wherein the Borough of Wilkinsburg attempted to force the School District of Wilkinsburg to collect an admission tax to athletic events at the stadium in Wilkinsburg. The Supreme Court, in the early part of 1950, and before our budget was adopted, held that the borough could not force the school district to collect such admission tax, and I advised council at that time that we had the right, under article IX of the Constitution, to exempt such matters . . .".

While the evidence shows that in the body of the ordinance the tax is levied as a general tax upon broad

classifications, the exemption clause nullifies this, and restricts the collection, almost exclusively, to the one class of amusement goers, i.e., the patrons of plaintiff's theatres.

A member of council testified, without denial, that council were advised, and believed, that the social events of the fraternal organizations were exempt from taxation because they were of a charitable nature. This may be the law in some of the States, but the instant case must be disposed of under the law of Pennsylvania, and such is not the law in Pennsylvania: McQuillin Municipal Corporations, vol. 16, §§44.65, 44.66 and 44.67.

"Whether an institution is in its character literary, benevolent, charitable or scientific, within the meaning of those words as used in exemption laws, depends upon its purposes declared and its work done. To qualify for exemption as a public charity, an institution must be shown to be operating without profit to its members or stockholders and for the benefit of the public at large, or of some part thereof, or of an indefinite class of persons": McQuillin, vol. 16, §44.76.

In most jurisdictions, tax exemption is not accorded to the property of social clubs, societies and institutions, and we have not been shown any section of the Constitution of Pennsylvania, nor any law, exempting such organizations as charities: McQuillin, vol. 16, §44.79.

The courts will not interfere with a tax levy made by a municipal corporation within the limits of its authority, which is in substantial compliance with the statutory requirements, except where an abuse of discretion is shown. The propriety of levying the particular taxes, generally, is not reviewable by the courts. The amount of tax to be imposed annually by the designated municipal authorities is such as, within

their discretion, they find necessary. The reasonableness of such tax is a legislative problem and the courts will not interfere except for clear abuse or failure to exercise such power.

Constitutional or statutory provisions which expressly, or by implication, limit the amount of taxes which may be levied, are mandatory. The general rule is that the exemption or immunity from taxation is limited to property actually devoted to public or to charitable use, as the case may be, and if the property is not devoted to public use but is held for revenue or like purposes, or if held by a municipality acting in its proprietary, as distinguished from its governmental, capacity, as where a city enters into a field of private competition, it forfeits its immunity from taxation: Pittsburgh School District v. Allegheny County, 347 Pa. 101, where it was held that the county may levy a tax on real estate owned by the school district but not used for any school purposes and, instead, leased for commercial purposes.

The testimony shows that in the year 1949 there were $5,890 receipts from football games played at the stadium by teams from outside the Borough of Canonsburg. In the same year there were $18,236 receipts from games of the Canonsburg team. In 1949 there were 25,071 admissions to the swimming pool, which produced receipts of $5,799.55. While taxation on athletic games and swimming events was not exempted, council did not collect, attempt to collect, nor consider revenue that might have been received therefrom, because of the mistaken opinion that they were without authority to collect the tax. In fixing the amount of tax to be raised by the ordinance, no consideration was therefore given to the revenue which could have been collected under this ordinance.

The courts must make judicial inquiry into the reasonableness of the ordinance in question. It is funda-

mental that the ordinance must be fair in its treatment, impartial in its operation, and general in its application. As stated in Scranton City v. Straff, 28 Pa. Superior Ct. 258:

"It must be conceded that all citizens in pursuit of legitimate and honest occupations stand equal before the law and the police power intrusted to a municipal corporation is unreasonably exercised when invidious distinctions are made between citizens who are endowed with equal rights . . . "

Article IX, sec. 1, of the Constitution of the Commonwealth of Pennsylvania, provides:

"All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws; but the General Assembly may, by general laws, exempt from taxation public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit, institutions of purely public charity, and real and personal property owned, occupied, and used by any branch, post, or camp of honorably discharged soldiers, sailors, and marines."

The title of ordinance no. 682 reads:

"Amusement Tax Ordinance providing for the levy and collection of a tax, for general Borough purposes, on admissions to Amusements within the Borough of Canonsburg."

There is no indication in the title of the broad exemptions incorporated in the body of the ordinance. The word "amusement" is defined in paragraph (b) of the enacting ordinance as follows:

"The term 'amusement' shall mean all manner and form of entertainment including among others, the following: theatrical performance, operatic performance, motion picture exhibition, sound motion picture exhibition, carnival, circus, show, concert, sports event,

swimming or bathing pool, vaudeville show, side show, amusement park and all forms of entertainment therein, dancing, golf course, bowling alley, billiard game, athletic contest, and any other form of diversion, sport, pastime, or recreation for which admission is charged or paid."

The relevant exemption clause reads:

*"Provided Further:* that 'amusement' shall not include any form of entertainment, the proceeds of which, after payment of reasonable expenses, inure exclusively to the benefit of religious, educational, or charitable institutions, societies, or organizations, veterans' organizations, or police or firemen's pension organizations." Subparagraph (*c*) reads:

"The term 'person' shall include natural person, firm association, co-partnership or corporation."

Tax exemption is not created by the borough; the right to exemption was created by general law as an incident or attribute of certain classes of property. That restriction of legislative power is in the Constitution. The restriction is limited to "institutions of purely public charity, and real and personal property owned, occupied, and used by any branch, post or camp of honorably discharged soldiers, sailors, and marines."

The legislative body, in this case the Council of the Borough of Canonsburg, can grant exemptions no broader than the constitutional provision permits: New Castle v. Lawrence County et al., 353 Pa. 175.

"Persons", as defined by the ordinance, are "natural person, firm, association, co-partnership or corporation". No question is raised as to the right to exempt "religious, educational or charitable institutions". There is a serious question as to whether the term "veterans' organizations" is limited by the ordinance to "branch, post or camp of honorably discharged soldiers, sailors or marines", as required by the Constitution. We have not been shown any provision of

the Constitution broad enough to include "police or firemen's pension organizations."

Counsel for defendant relies upon the case of Young Men's Christian Association of Philadelphia v. Philadelphia et al., 139 Pa. Superior Ct. 332. This case relates to a Retail Sales Act, which was taken from the Sales Act for the City of New York, which provided, inter alia, that "sales or services by or to semi-public institutions . . . shall not be subject to tax hereunder." The act defines "semi-public" to mean "those charitable and religious institutions which are supported wholly or in part by public subscriptions or endowment and are not organized or operated for profit." The city attempted to impose a sales tax on the Young Men's Christian Association restaurant and the court restrained the city, holding that the word "semi-public" was not in general use in Pennsylvania, but had been defined in New York, and that, under the express provisions of the ordinance, the Young Men's Christian Association was exempt. In this case the court held, p. 344:

"It is the *institution* itself—not some incidental activity of it—which is excepted from the tax in the ordinance, and no one can justly contend, from the facts, that the Y.M.C.A. of Philadelphia is not a charitable or religious organization, supported in part by public subscriptions or endowment and that it— that is the *institution*—is not organized or operated for profit, although certain incidental activities may produce revenue greater than their cost, which is applied to the reduction of the general deficit." (P. 341-342)

"In the present case it is not the property of the charitable institution which is excepted from the tax imposed by the ordinance, but the *institution itself*, provided it comes within the definition of a semi-public

institution as declared in the ordinance, as this appellant does." (P. 344)

"The expression in the constitutional provision (Art. IX, sec. 1, supra.) is broad enough to apply to the *institutions* of purely public charity, no less than their property, real and personal."

In order to bring the Borough of Canonsburg tax within the scope of this case, it would be necessary to show that all of the activities exempted by the borough from taxation were incidental activities carried on by a purely public charity. We are not convinced that the persons exempted in the ordinance, "societies, organizations, veterans' organizations, police or firemen's pension organizations", are institutions of public charity. Nor are we of the opinion that the Young Men's Christian Association case controls the exemptions included in the Canonsburg ordinance.

We shall discuss the attempted inclusion in the exemption of the classes, "societies or organizations". No further limitation is included in the ordinance of the persons, firms, associations, copartnerships or corporations intended to be included therein, so we must, therefore, assume that these words have their usual and natural significance and meaning. "Societies" are defined in Bouvier's Law Dictionary, vol. 3, p. 3088, as follows:

"A society is a number of persons united together by mutual consent, in order to deliberate, determine, and act jointly for some common purpose. Societies are either incorporated and known to the law, or unincorporated, of which the law does not generally take notice."

In Webster's New International Dictionary, "society" is defined, inter alia, as "An alliance, a confederation, union, partnership; a voluntary association of individuals for common ends; a corporate or co-

operative body." The "organization" appears to be such a general term that it is not defined in the legal dictionary. In Webster's New International Dictionary the nearest relevant definition is, "that which is organized; an association of persons as in a club; the various persons who conduct a business considered as a unit." Had plaintiff been a partnership, a corporation, a "society" or an "organization", plaintiff would have the benefit of this exemption.

The court cannot, by judicial legislation, change the definition of "person", nor where the words are free from ambiguity, can the courts disregard the obvious meaning of the words under the pretext of pursuing what may appear to be the spirit of an ordinance: Statutory Construction Act of May 28, 1937, P. L. 1019; Pittsburgh Milk Company v. Pittsburgh et al., 360 Pa. 360.

While classification under the Constitution is elastic, the use in this ordinance of the general terms "organizations" and "societies" and the specific broadening of "persons" to include corporations, firms, associations and copartnerships, and the failure to limit and classify such societies and such organizations, in effect limits the liability for such taxes to individuals.

The courts must be astute to assure equality and uniformity of taxation and the provisions of the Constitution apply to all taxes levied by the State or its political subdivisions: Rich Hill Coal Company et al. v. Bashore, 334 Pa. 449 (498).

"Even if payment is to be made only by those who accept the act it would not be uniform, as the tax would be imposed on some members of a group without a corresponding imposition on other members of the same group."

See also A. E. Dick Contracting Company v. Hazle Township School District et al., 362 Pa. 387; Lawrence Township School District Tax Case, 362 Pa. 377;

American Stores Company v. Boardman et al., 336 Pa. 36.

The argument for defendant that the exempted items would have produced slight revenue and that the ordinance is severable and only the stricken clauses should be invalidated, cannot prevail. As was said in Kelley et al. v. Kalodner et al., 320 Pa. 180, " . . . although in the present case the exemption appears to be reasonable, the principal of inequality involved, if once established, might lead to grossly unfair results in the future."

We have been shown no constitutional mandate which permits exemptions to be made for all of the persons, firms, organizations, societies, and activities which the borough has exempted. Therefore, the classification is not reasonable and the ordinance is discriminatory and lacking in uniformity, and violative of the uniformity provision of the Constitution.

We have not discussed the meaning of the word "insure" in the exemption clause. This may have been a typographical error in the enactment of the ordinance. The evidence in this case, however, shows that the word "insure" is the word used in the enactment.

### Conclusions of Law

1. The Borough of Canonsburg is a political subdivision of the Commonwealth of Pennsylvania.

2. The Borough of Canonsburg, acting through its council and its properly constituted officers, enacted an ordinance designated as ordinance no. 682 for the levy and collection of a tax for general purposes on admissions to amusements within the Borough of Canonsburg.

3. Plaintiff, Fred A. Beedle, owned all of the theatres operating in the Borough of Canonsburg at the time of the enactment of the ordinance.

4. Ordinance no. 682 of the Borough of Canonsburg is unreasonable in that, in its practical application, it does not impose a uniform tax on all amusements as defined and classified in the ordinance.

5. Ordinance no. 682 is unconstitutional and invalid because it exempts from its provisions "societies or organizations, veterans' organizations, police organizations and firemen's pension organizations", none of which exemptions are authorized by section 1, art. IX, of the Constitution of the Commonwealth of Pennsylvania.

6. A society is a number of persons, united together by mutual consent, in order to deliberate, determine, and act jointly for common purpose. A society is an alliance, a confederation, union, partnership; a voluntary association of individuals for common ends; a corporate or coöperative body.

7. An organization is that which is organized; an association of persons as in a club; the various persons who conduct a business considered as a unit.

8. "Persons", in ordinance no. 682, includes corporations, firms, associations and copartnerships. Such limitation by definition within the ordinance limits the liability for such taxes to individuals.

9. The classification of subjects under ordinance no. 682 is discriminatory, lacks uniformity, and is in violation of article IX, sec. 1, of the Constitution of the Commonwealth of Pennsylvania.

10. Defendant Borough of Canonsburg and its duly constituted officials are hereby enjoined from enforcing the collection of tax under ordinance no. 682.

11. The costs of this proceeding shall be paid by the Borough of Canonsburg.

### Decree Nisi

And now, April 28, 1952, it is ordered that the foregoing adjudication be filed; that notice of its filing

be given by the prothonotary to counsel appearing of record; and that if no exceptions be filed thereto sec. reg. an official decree shall be drawn and entered in accordance with the conclusions of law before set forth.

### Final Decree

And now, May 9, 1952, it is ordered and decreed:

1. That the Borough of Canonsburg, Washington County, Pa., and its duly constituted officials, A. J. Bodenham, P. M. Willis, Joseph A. Yates, Henry Norwood, Clinton Stevens, Anthony Szalanski, Fred Terling, Bernard Kobosky, and Fred Lanzy, members of Council of the Borough of Canonsburg; Carl J. Gessler, secretary of the Borough of Canonsburg, and Fred Caruso, burgess of the Borough of Canonsburg, be and are hereby enjoined from enforcing the collection of taxes under ordinance no. 682 of the Borough of Canonsburg, which ordinance is hereby declared to be unconstitutional and void.

2. Judgment is hereby entered in favor of plaintiff, Fred A. Beedle, and against defendant, Borough of Canonsburg, for costs.